In re the **MARRIAGE OF Rosenel STRE-LOW, as known as Rosenel H. Bequette, Petitioner, Respondent-Appellant,**

and

**Kenneth R. Strelow, Respondent, Appellant-Respondent.**

**Nos. 39557, 39569.**

Missouri Court of Appeals, Eastern District, Division One.

April 10, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 18, 1979.

Application to Transfer Denied June 19, 1979.

Nicholas E. Gasaway, Florissant, for Rosenel Strelow, petitioner, respondent-appellant.

Margaret M. Nolan, Ann Q. Niederlander and Lloyd E. Eaker by Lloyd E. Eaker, Clayton, for Kenneth Strelow, respondent, appellant-respondent.

SNYDER, Presiding Judge.

Cross appeals were filed on the division of marital property in this dissolution of marriage action. The specific issue is whether the trial court erred in awarding the husband-respondent $6,500 in cash to equalize the property division. Predictably, the husband (Kenneth) claims the award of $6,500 is insufficient, while the wife (Rosenel) asserts it is excessive.

The trial court's judgment is modified and as modified, affirmed.

The parties were married in October of 1973 and separated in December of 1976. Apart from personal items and home furnishings, each brought certain assets to the marriage. Kenneth owned Jan Barry Cleaners (a dry cleaning establishment) and possessed two leased automobiles. The trial court found the value of the assets he contributed to be about $2,000.

Rosenel owned three parcels of property: (1) a house and lot at 9429 Tudor, net value $6,000; (2) a house and lot at 2907 Hilleman Avenue, net value $7,000; and (3) a house and lot at 3324 Calvert Avenue, net value $15,000. The Tudor and Calvert properties were rented before and during the marriage. At the time of trial, the Tudor property rent was $140 per month. In the years 1973–1976, it generated $5,600 in rental income. The Calvert property rented for $315 per month at the time of trial and produced $11,600 in rental income in the years 1973–1976.

Rosenel also owned a 1965 Comet automobile, valued at $300 and had $386 in her savings account. The trial court found she contributed to the marriage assets worth $28,700. As can readily be seen, there was substantial difference in the value of the parties' contributions at the outset of the marriage.

On the day following their marriage, Rosenel and Kenneth purchased a house at 4202 McKibbon Road, in Breckenridge Hills, for $34,500. Kenneth put down $500 earnest money. A note for $5,000 of the $6,784 down payment was signed by the parties and secured by the property at 2907 Hilleman. The remainder of the down payment came from Rosenel's savings and from the parties' joint checking account. Mortgage payments were made during the course of the marriage. Rooms of this house were also rented for $240 per month. At the time of trial, the rent received from the Tudor, Calvert and McKibbon properties totaled $695 per month. (The Hilleman property was sold in August 1974.)

Rosenel was steadily employed throughout the marriage. Kenneth held several different jobs and was sometimes unemployed. Their individual total incomes from wages during the course of the marriage (including Kenneth's unemployment compensation) were approximately equal: $19,661 for Rosenel and $19,960 for Kenneth.

Losses from the dry cleaning business and bad investments, however, off-set the rental income and wages. In the years 1973 through 1976, their investments and business enterprises lost nearly $43,000 which the trial court, in its findings of fact, attributed to Kenneth.

After making detailed findings of fact and conclusions of law, the trial court divided the parties' marital property in the following manner:

| To Rosenel | Value Found by Court |
|---|---|
| 1. Real property located at: | |
|    a. 9429 Tudor | $ 6,300 ($10,000 less $3,700 lien) |
|    b. 3324 and 3324–A Calvert | 15,000 |
|    c. 4202 McKibbon | 10,500 ($36,500 less $26,000 mortgage) |
| 2. 1975 Cadillac | 2,000 ($6,200 less $4,200 lien) |
|    Total net value | $33,800 |

| To Kenneth | Value Found by Court |
|---|---|
| 1. Morgan's Arnold Palmer's Cleaners[1] | $ 6,500 |
| 2. Bear Enterprises, a business | unvalued |
| 3. 1977 Ford Van | 1,000 |
| 4. $6,500 cash from Rosenel | 6,500 |
|    Total net value | $14,000 |

The $6,500 cash award amounted to a transfer of funds instead of an additional sum. It should not be added twice in computing the total value of the marital property. Thus, the total net value of the parties' marital property is $41,300 and not $47,800. Rosenel really received $27,300 and Kenneth received $14,000.

Kenneth has filed a motion to dismiss Rosenel's appeal because, in his view, her brief fails to comply with Rules 84.04(c) and (d). Rosenel's statement of facts, although not a model of fairness, conciseness and relevancy, is more than adequate to aid the court in consideration of the issues raised and presented on appeal. There was no attempt on counsel's part to distort or misrepresent the facts of the case. See *French v. Tri-Continental Leasing Co.*, 545 S.W.2d 345 (Mo.App.1976).

■ Two of Rosenel's Points Relied On do violate Rule 84.04(d), in that they merely state abstract principles of law without any indication of what ruling of the trial court is to be reviewed or wherein and why the trial court erred. These points will not be considered on appeal. *Thummel v. King*, 570 S.W.2d 679 (Mo. banc 1978). Rosenel's

claim of error in the division of the marital property is adequately stated and will be discussed along with Kenneth's complaint that he received too little in the trial court's award.

■ Court-tried cases are reviewed upon both the law and the evidence under Rule 73.01, with due regard given to the trial court's opportunity to judge the credibility of the witnesses. *In re Marriage of Carmack*, 550 S.W.2d 815, 817 (Mo.App.1977); *LoPiccolo v. LoPiccolo*, 547 S.W.2d 501 (Mo. App.1977). Under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), the trial court's judgment is to be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *In re Marriage of Carmack, supra*; *Blessing v. Blessing*, 539 S.W.2d 699 (Mo.App.1976).

■ Two other basic rules govern an appellate court's review of an order distributing marital property. The first of these is that § 452.330 (RSMo Cum. Supp.1975) does not require an equal division of the marital property.[2] The statute's emphasis, instead,

1. In 1976 Kenneth sold Jan Barry Cleaners and purchased Morgan's Arnold Palmer's Cleaners.

2. *Hilger v. Hilger*, 570 S.W.2d 736 (Mo.App. 1978); *Smith v. Smith*, 561 S.W.2d 714 (Mo.

App.1978); *Daniels v. Daniels*, 557 S.W.2d 702 (Mo.App.1977); *Smith v. Smith*, 552 S.W.2d 321 (Mo.App.1977); *In re Marriage of Schulte*,

is on a division which is just, fair and equitable under the particular circumstances of the parties.[3] The standard for dividing marital property is flexible; there is no pat mathematical formula or method of division which assures a just distribution.[4]

The second rule, a necessary corollary to the first, is that the trial court is vested with considerable discretion in dividing the marital property; "appellate courts will neither scour and nit-pick the record for accounting error nor second-guess the trial court's balance of the equities . . . ." *In re Marriage of Schulte*, 546 S.W.2d 41, 47 (Mo.App.1977). Before an appellate court will disturb the trial court's division under § 452.330, "it should appear from the record that the trial court erred or abused its discretion in decreeing the division [Citing cases] . . . ." *Hilger v. Hilger*, 570 S.W.2d 736, 740 (Mo.App.1978).[5]

■ The parties do not challenge the trial court's finding that the Tudor, Calvert and McKibbon properties are marital property. Nor could they, because in June of 1974 Rosenel executed a quit-claim deed by which, for consideration of $1.00, she conveyed the Tudor, Calvert and Hilleman properties, from her name alone, into a joint tenancy with Kenneth.[6] The McKibbon property was acquired subsequent to the marriage and was entitled in both parties' names. § 452.330.3.

■ Nor do the parties dispute the trial court's authority to order a cash award to one party to achieve a just division when the other spouse receives property not divisible in kind. See, *Snider v. Snider*, 570 S.W.2d 770 (Mo.App.1978); *Gross v. Gross*, 557 S.W.2d 448 (Mo.App.1977); *Claunch v. Claunch*, 525 S.W.2d 788 (Mo.App.1975). Instead, the issue they both raise is whether $6,500 was the proper amount needed to achieve a just distribution. Consideration of the four factors set out in § 452.330 indicates the trial court abused its discretion in setting the cash award at $6,500.

Section 452.330.1 lists four nonexclusive factors to be considered by the trial court in its just division of the marital property: (1) the contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as a homemaker; (2) the value of the property set off to each spouse; (3) the economic circumstances of the parties at the time the division is to become effective; and (4) the conduct of the parties during the marriage.

One of the most important factors in this case, lending support to an unequal distribution, is the contribution of each spouse to the acquisition of the marital property. As noted before, Rosenel contributed assets worth $28,700 to the marriage. Kenneth brought only about $2,000. Rosenel had owned the Tudor property since 1947; she had purchased the Calvert property in 1966 and the Hilleman property in 1969. She thus had made substantial payments on the mortgages before the marriage. The parties made disproportionate initial contributions to the marriage and those unequal contributions must be reflected in an unequal division of the marital property.

The parties' contributions during the marriage were more equal. Both parties worked and earned approximately equal amounts. Although Rosenel's wages fre-

---

546 S.W.2d 41 (Mo.App.1977); *In re Marriage of Powers*, 527 S.W.2d 949 (Mo.App.1975).

3. *Smith v. Smith, supra; Halbrook v. Halbrook*, 557 S.W.2d 45 (Mo.App.1977); *Seiner v. Seiner*, 552 S.W.2d 54 (Mo.App.1977); *In re Marriage of Cornell*, 550 S.W.2d 823 (Mo.App. 1977).

4. *Hilger v. Hilger, supra; In re Marriage of Badalamenti*, 566 S.W.2d 229 (Mo.App.1978); *Daniels v. Daniels, supra; Halbrook v. Halbrook, supra; Seiner v. Seiner, supra; Cornell, supra; Corder v. Corder*, 546 S.W.2d 798 (Mo.

App.1977); *Claunch v. Claunch*, 525 S.W.2d 788 (Mo.App.1975).

5. Accord: *Hebron v. Hebron*, 566 S.W.2d 829 (Mo.App.1978); *Badalamenti, supra; Halbrook v. Halbrook, supra; Beckman v. Beckman*, 545 S.W.2d 300 (Mo.App.1976); *Conrad v. Bowers*, 533 S.W.2d 614 (Mo.App.1975).

6. The Hilleman property was sold later in 1974. $5,000 of the $7,000 received was used to pay off the note given at purchase of the McKibbon property. The remaining $2,000 was placed in Kenneth's personal account.

quently went to make all or part of the mortgage payments on the Tudor and Calvert properties, that merely freed Kenneth's for daily and household expenses. The source of the McKibbon mortgage payments is not clear, but apparently they were made from joint funds. The trial court made no finding as to the parties' individual contributions in paying off this loan. Kenneth did suffer losses in his business ventures, but Rosenel also lost $5,000 on a bad investment. Both parties worked to repair the rental properties and to improve their home. Kenneth frequently collected the rents. Repairs valued at $1,650 were made to the Calvert property. The trial court found Kenneth and Rosenel had jointly made those repairs. The trial court also found repairs and improvements had been made to the McKibbon property, increasing its value by $1,500. Kenneth and Rosenel undertook the repairs together, while Kenneth did most of the work on the improvements. For his part in these repairs and improvements Kenneth should be awarded $1,825 ($825 for Calvert and $1,000 for his greater contribution to the improvements at McKibbon).

As to the second factor, no separate property of substantial value was awarded to either party. The award lists no bank accounts, stocks, bonds or insurance. Rosenel's property was income-producing, generating nearly $700 per month. Kenneth received a going business, the profitability of which is not established.

The parties' economic circumstances were also unequal. Kenneth is eight years younger than Rosenel. Although their wages were approximately equal during the marriage, Kenneth was able to earn that amount while being unemployed at different times, thus raising a reasonable inference that he had greater potential earning power. The fact that Kenneth was unemployed at the time of the trial was entitled to little weight since he had been unemployed before and was healthy, able to work and employable.

The final factor listed under § 452.330.1 is the conduct of the parties during the marriage. This consideration strongly favors Rosenel. The trial court found Kenneth was guilty of marital misconduct with another woman. Kenneth challenges this finding, but it was supported by evidence which this court declines to recount.

Kenneth's misconduct in the parties' financial dealings should have been of much greater importance to the property division. Kenneth purchased or leased thirteen different automobiles during the three year marriage, including a 1975 and a 1977 Cadillac. The 1977 Cadillac was repossessed at a loss of $3,000. He also purchased three boats, the last of which cost $6,808 and was repossessed at a loss of $2,000. Kenneth's activities in this regard must be categorized as a profligate dissipation of the marital assets. Kenneth also endorsed or signed Rosenel's name to checks and documents without her knowledge or approval. There was other evidence which indicated Kenneth misappropriated to his own accounts funds which ought to have been joint property.

There was no evidence of any misconduct on Rosenel's part. She worked steadily and was responsible for most of the household chores. She took in laundry and did alterations and sewing for Kenneth's cleaning business. While the parties claimed sexual difficulties, it would not be appropriate to lay the blame for that incompatibility on either party.

Kenneth's financial misconduct during the marriage cannot be ignored by this court in reviewing the fairness of the property division. His opprobrious actions in improperly appropriating joint funds, forging Rosenel's name and wasting marital assets more than off-set any contribution he may have made toward the purchase of the McKibbon home. He should not be entitled to any share of the increase in the equity in that property.

Considering all factors in Rosenel's favor—unequal initial contribution, their economic circumstances and Kenneth's misdealings and misconduct—the amount of the cash award to Kenneth is reduced to $1,825, his actual contribution in repairs and improvements of the properties.

Rosenel has cited the case of *Singleton v. Singleton*, 525 S.W.2d 642 (Mo.App.1975) in support of her argument that Kenneth was not entitled to any award. Although there are many factual similarities, *Singleton* is distinguishable since the court there found as a matter of fact that the husband had a fixed design and scheme by which he sought to transfer his wife's substantial assets into his possession. No such finding of fact was made here.

This court fully recognizes, "[t]he trial judge is faced with a difficult job of dividing the marital assets between husband and wife. Rarely does his resolution satisfy both parties. We should not second guess the trial judge unless there has been an abuse of discretion." *Halbrook v. Halbrook*, 557 S.W.2d 45, 46 (Mo.App.1977). Considering the record and the applicable law, however, this court is convinced the trial court's division of marital property and its award of $6,500 is against the weight of the evidence. *Murphy, supra.* There is a firm conviction that the amount of the award was wrong and an abuse of discretion. The trial court properly recognized Kenneth should receive an amount of cash to reflect his contribution to maintenance and improvement of the marital properties. The amount awarded, however, greatly exceeded the value of his contributions and did not give sufficient weight to the parties' disproportionate initial contributions and Kenneth's misconduct. Failure to properly weigh these factors resulted in an unjust and inequitable division.

Rosenel contributed 93.5 percent, and Kenneth only 6.5 percent, of the assets brought to the marriage. Under the trial court's judgment Rosenel would have received only $27,300 of the assets (66.1%), an amount less than the $28,700 she had originally contributed. Even under the judgment as modified Kenneth has gained $7,325 during the marriage ($9,325 less $2,000), substantially more than Rosenel's gain of only $3,275 ($31,975 less $28,700).

Finally, Kenneth argues that two of the trial court's "Conclusions of Law" are inconsistent, an abuse of discretion and placed "an unsubstantiated burden" on him. Briefly, the inconsistency claimed was that although the business properties possessed by the parties were found to be marital property, the business and investment losses were attributed solely to Kenneth. The findings are not inconsistent and are supported by the evidence showing that Kenneth operated the businesses. The nature of the "burden" and how it prejudiced Kenneth are not revealed in his brief. In any event, the real issue—the amount of the cash award to Kenneth—has been resolved with little reliance on his business losses. No prejudice is apparent even if the conclusions were in error.

The judgment is modified by reducing the cash award to Kenneth from $6,500 to $1,825. As modified, the judgment is affirmed.

WEIER, C. J., and SMITH, J., concur.