In re the MARRIAGE OF Glenn Henry PEHLE and Barbara Mae Pehle,

Glenn Henry PEHLE, Plaintiff-Respondent,

and

Barbara Mae PEHLE, Defendant-Appellant.

No. 43219.

Missouri Court of Appeals, Eastern District, Division Three.

June 30, 1981.

Richard B. Dempsey, Clayton, for defendant-appellant.

Frederick H. Schwetye, Union, for plaintiff-respondent.

CLEMENS, Senior Judge.

Husband Glenn H. Pehle and wife Barbara Pehle both prevailed in seeking dissolution of their twenty-year marriage. Wife appeals from the parts of the decree granting custody of one of two children to husband, and dividing marital property.

For twenty-four years husband had worked as a truck driver for the same employer and was away from home half the days of each month. The parties lived on a family farm operated by the husband. At his job husband earned $19,000 a year. The wife had worked irregularly but for the last year had worked at a tavern earning over $600 a month.

The core of marital trouble was wife's eight-month association with Edward Johns who frequented the tavern. In granting child custody to husband the court found wife "has abdicated her maternal responsibilities and is not a fit and proper person to have custody of these two children". We relate the evidence of this.

Husband testified about his wife's conduct beginning several months before he filed suit and continuing for six months more until trial, during all of which time they occupied the same house. Many times wife would not be home when husband had to leave for work in the early morning and he had to take the 11-year-old daughter to a relative's home. Oftentimes wife would not come home until daylight, at times not until "mid-morning or later in the day". Sometimes she would be intoxicated when the daughter was home. Three times husband saw wife and Johns together in a car hours after the tavern had closed. Once, when husband asked her what she was doing there she answered it was none of his business because she had no feeling for him.

Others testified to wife's conduct with Johns once or twice a week at or after leaving the tavern. A co-worker said she had seen the two embracing with his hands under her clothing. She once saw them in a parked car at five o'clock in the morning. Often wife was intoxicated. Several times she saw the daughter in the tavern with her mother and Johns.

Four others, two deputy sheriffs, a co-worker of defendant, and a tavern customer also testified to wife's frequent conduct with Johns in and out of the tavern. We summarize that testimony. At times Johns intimately fondled wife, over and underneath her clothing. Several of those times daughter Melissa was present in the tavern. Many times wife left the tavern with Johns at closing time, returning to get her car hours later. Twice they spent hours in unlighted homes, his and hers.

Wife and Johns testified to their frequent meetings in and out of the tavern, often at late hours. They denied sexual intercourse.

As said, the trial court concluded wife had abdicated her maternal duties and was not a fit parent. Evaluating the comparative parental fitness was the trial court's prerogative, to which we owe deference. *N.J.W. v. W.E.W.*, 584 S.W.2d 148 [3, 4] (Mo.App.1979). Here, we cannot conclude the child's welfare requires a different disposition. Compare *In re Marriage of Estelle*, 592 S.W.2d 277 [1] (Mo.App.1979). See also *N.J.W. v. W.E.W.*, 584 S.W.2d 148 [3, 4] (Mo.App.1979) and *D.L.C. v. L.C.C.*, 559 S.W.2d 623 [5] (Mo.App.1977), in each of which custody of three children was awarded the father.

We deny wife's point as to child custody, and now look to her monetary contention. Assessing this, we follow Sect. 452.330 1. RSMo. 1978. Division of marital property is to be in such proportion as the court deems just, including the factors of each

party's contribution to marital property, the use of the family home by the parent having child custody, and the parties' marital conduct.

The trial court awarded husband the family home farm where he was to care for two daughters; the husband had acquired it in substantial part by inheritance. Evidence placed its value at $116,500. The court also awarded him personal property valued at $16,500, making a total award of $133,000. To the wife the court awarded $11,850 worth of personal property and ordered husband to pay her $45,000 in 120 monthly installments, for a total of $56,850. Thus, the court awarded husband 70% and wife 30% of the overall value of real and personal property.

A just division need not be an equal one, particularly where one party is guilty of misconduct. *In re Marriage of Lindenfelser*, 596 S.W.2d 71 [1, 2] (Mo.App. 1980). The standard for dividing marital property is flexible and appellate courts will neither scour nor nit-pick the record to second-guess the trial court's balance of equities. *In re Marriage of Strelow*, 581 S.W.2d 426 [3] (Mo.App.1979). Weighing those equities is discretionary. *Forsythe v. Forsythe*, 591 S.W.2d 222 [2] (Mo.App.1979).

We have considered the above-cited statutory factors to be applied in dividing marital property, and the cited principles governing our review. We find no reversible error in the division of marital property.

Last, wife contends the trial court erred in decreeing that the above-mentioned $45,-000 award to wife was not to be a lien on his property. This, she argues, because Sect. 452.080 RSMo. 1978 provides alimony in gross shall be a lien on the debtor's real estate. This argument has a faulty premise because the $45,000 award was not alimony in gross; it was a division of property. The trial court specifically found wife was not entitled to maintenance from the husband, and further specifically decreed the $45,000 award was for her interest in the marital property. Wife's last point is without merit.

Judgment affirmed.

CRIST, P. J., and REINHARD and SNYDER, JJ., concur.