In re MARRIAGE OF Beverly Jo Taylor KUHL, Petitioner-Appellant,

and

Michael Arthur Kuhl, Respondent-Respondent.

No. 12388.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 13, 1982.

Devon F. Sherwood, Loren R. Honecker, Springfield, for petitioner-appellant.

B.H. Clampett, Richard Paul Wacker, Daniel, Clampett, Ritterhouse, Dalton & Powell, Springfield, Kenneth R. Babbit, Kimberling City, for respondent-respondent.

MAUS, Presiding Judge.

The contested issue in this dissolution action is the custody of the one child born of the marriage. After an initial and an adjourned hearing the trial court placed the daughter, twenty-nine months of age, in the principal custody of the father with the mother to have periodic custody as set forth in the decree. The mother appeals.

Her basic point is the insufficiency of the evidence to support that award of custody. In passing upon that contention this court must give due regard to the opportunity of the trial court "not only to judge the credibility of the witnesses and the persons directly but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." *L.E.(S.) v. J.A.E.*, 507 S.W.2d 681, 684 (Mo. App.1974). All fact issues will be considered as found in the trial court's memorandum opinion. Any fact issue not included in the specific findings of the trial court will be considered in accordance with the result reached. Rule 73.01.

■ As a prelude to arguing the deficiencies in the evidence she cites the often repeated maxim that all factors being equal, a child of tender years should be in the custody of the mother. *Elfrank v. Elfrank,* 605 S.W.2d 172 (Mo.App.1980). This has been said not to be a presumption but a recognized fact of life based on human experience. *In re Marriage of J——— H——— M———,* 544 S.W.2d 582 (Mo.App. 1976). However, it yields readily to evidence that custody by the father is in the best interests of the child. *Gillespie v. Gillespie,* 590 S.W.2d 420 (Mo.App.1979); *N.J.W. v. W.E.W.,* 584 S.W.2d 148 (Mo.App. 1979).

In reaching its decision the trial court concluded the mother testified falsely concerning her relationship with one Roger Surface and her entire testimony was to be viewed with extreme skepticism. The mother argues the court arrived at this conclusion upon the basis of inadmissible evidence, referring to two letters written to her by Surface. It is not desirable or necessary to recite in detail the evidence concerning this relationship. It is sufficient to note she met him after the separation. Thereafter, he frequently called on her. This was followed by the mother and child and mother's parents visiting in Marble Hill where Surface and his parents lived. There is some indication in the record of a kinship or at least an acquaintance between the families. The letters in question followed that visit. Those letters have been termed love letters. They were used by the husband's counsel in wrenching from the mother some of the details of the relationship in question. The letters were later admitted in evidence. The mother contends the letters were hearsay and improperly admitted. Therefore, she argues the above conclusion of the court is ill founded.

■ It is not necessary to explore in detail in the abstract the admissibility of such letters. The mother did not object to the admission of one letter. She objected to the other because it was not proper impeachment. She cannot now contend it was inadmissible because it was hearsay.

*Ingle v. Illinois Cent. Gulf R. Co.,* 608 S.W.2d 76 (Mo.App.1980).

■ Further, the detailed evidence of the activities of the mother and Surface, irrespective of the letters, provided a sound basis for this conclusion of the trial court. *H——— v. D———,* 373 S.W.2d 646 (Mo. App.1963); *Rex v. Rex,* 217 S.W.2d 391 (Mo.App.1948). This is particularly true when considered with the other inconsistent and vague testimony of the mother. For example, she first stated she was off work two weeks while deciding what to do. Later she said she was off work in order to potty train the 2½-year-old child. At first she stated the father always went with her to the rodeo events in which she participated, but later admitted he did not. She first indicated that during the Marble Hill visit she stayed with the parents of Surface and only upon further examination admitted she stayed with Surface in his small apartment. She couldn't remember if she and Surface had discussed marriage. Even if the letters were improperly admitted over proper objection, that admission did not require reversal. *Blair v. Blair,* 600 S.W.2d 143 (Mo.App.1980).

■ The mother also contends there is a complete lack of proof of the desirability of the home environment in which the child was placed. In this connection she argues the trial court improperly considered a "home study" of the father's and mother's homes made by the Department of Family Services pursuant to an order of the court under § 452.390. She says the report was hearsay and could not be considered citing *Smead v. Allen,* 581 S.W.2d 93 (Mo.App. 1979); *In re Marriage of Cavitt,* 564 S.W.2d 53 (Mo.App.1978); *Flickinger v. Flickinger,* 494 S.W.2d 388 (Mo.App.1973). Again, it is not necessary to consider, in the abstract, the proper use of home studies made under § 452.390. When the initial hearing opened, the court announced it would hear testimony on the question of child custody, that it might elect to order a home study of both parties and that it would make the entry on the property settlement at the conclusion of the testimony. This an-

nouncement was followed with an inquiry "is that agreeable, gentlemen?" Counsel for each party replied, "Yes." When the initial hearing concluded, the court did order a home study. In doing so, the court said it felt the home study was needed to assist the court in reaching a final determination of the case. He concluded his remarks with the comment that as soon as the home study was filed, he would decide the case and inquired of counsel if there was anything further or any questions. Counsel replied, "No." The legal file shows the home study was filed on May 11, 1981, and the memorandum opinion recites that a copy of such report was provided to counsel. At the adjourned hearing heard on June 10, 1981, the father offered additional evidence concerning his proposed arrangements for caring for the child. No objection was made to the court considering the home study. These circumstances are tantamount to the court's consideration of the home study by agreement of the parties. If the mother objected to the procedure proposed by the trial court, she should have voiced that objection at that time. *Niederkorn v. Niederkorn,* 616 S.W.2d 529 (Mo.App.1981).

Further, there was independent evidence of the environment to be provided by the father. The father and child were to live in the mobile home in which the parties had lived. Pictures of the mobile home were in evidence. This mobile home was located approximately 150 feet from the father's veterinary clinic. He proposed that during working hours the child would be cared for by his mother who lived in the community. When his mother was unavailable, the child would be cared for by a licensed baby sitter. The father's mother testified of her desire to care for her grandchild. Compare *Byars v. Byars,* 593 S.W.2d 656 (Mo.App.1980). In contrast, at one time in the trial the mother testified that if she was granted custody she did not know where she would be living or what arrangements she would make for herself and her daughter. Later in the trial she admitted she wrote her father stating that after the dissolution she would move to Marble Hill although she steadfastly denied any plans for remarriage.

In addition to the facts mentioned, the trial court took into consideration the mother's demonstrated lack of interest in the child. This finding of the trial court was amply supported by the evidence. For example, her rodeo activities in the summer months kept her from the home and the child as often as 4 or 5 nights per week as late as 1:00 to 3:00 a.m. There was also evidence that after the separation the mother did not demonstrate a maternal interest in the child. *In re Marriage of Pehle,* 622 S.W.2d 711 (Mo.App.1981). "Deliberate misrepresentation of the facts by one or another party to a custody action indicates that the party is probably an unsuitable custodian of the child, as does a manifest lack of interest in the child." *H———— v. D————,* supra, at p. 654. The judgment is affirmed.

HOGAN and PREWITT, JJ., concur.