In re the **MARRIAGE OF Richard L. PLANK and Diana S. Plank.**

**Richard L. PLANK, Respondent,**

v.

**Diana S. PLANK, Appellant.**

No. 13095.

Missouri Court of Appeals,
Southern District,
Division Three.

May 3, 1984.

---

David L. Steelman, William E. Cornwell, Salem, for appellant.

Ronald H. Bartlett, Columbia, for respondent.

CROW, Presiding Judge.

Appellant ("Diana") appeals from a judgment dissolving her marriage to respondent ("Richard"). She asserts the trial court erred in granting Richard custody of the parties' only child.

Diana and Richard were married April 3, 1976. As best we can deduce from the record, Diana was 18 or 19 years of age at that time, and Richard was 21 or 22. Their daughter, Michelle Lynn Plank, was born August 15, 1978.

The marriage was the third for Diana, and evidently the first for Richard. It was punctuated by separations. On three occasions, Diana left Richard; on three other occasions, he left her.

The litigation that spawned this appeal commenced June 24, 1980, when Richard filed a petition for dissolution. Diana, in due time, answered and filed a cross-petition for dissolution.

The cause was tried April 24, 1981, after which the parties were granted leave to file briefs, which they later did.

For reasons unexplained in the record, several months passed thereafter without entry of judgment. On December 8, 1981, Diana filed a motion to reopen the case and present further evidence.

On March 9, 1982, on Diana's application, she was granted specific temporary visitation and custody rights with Michelle, who had been in the primary custody of Richard since the litigation began.

The case was reopened April 2, 1982, and both parties presented further evidence. Again, without explanation, several more months passed without entry of judgment.

On September 1, 1982, Diana filed a motion seeking to have Richard punished for contempt for allegedly disobeying the order of March 9, 1982. A hearing was held on this motion on September 30, 1982, resulting in a denial of the motion. On the same day (September 30, 1982) the trial court entered judgment dissolving the marriage, setting apart to each party his separate property, and dividing the marital property.[1] The judgment awarded Richard primary custody of Michelle, and granted Diana visitation on alternate weekends from 8:00 p.m., Friday until 7:00 p.m., Sunday. Diana was also allowed three separate two-week periods of temporary custody each summer, and provision was made for Diana to have Michelle on certain specified holidays. Diana was ordered to pay Richard child support of one dollar per year. No maintenance was awarded either party, nor was either ordered to pay attorney fees to the other.

Diana filed a timely motion for new trial, which was denied January 6, 1983. This appeal followed.

Diana's sole complaint is that the trial court erred in granting custody of Michelle to Richard. Diana presents three arguments, one of which is that the trial court abused its discretion and departed from impartiality in keeping the case under advisement for approximately 18 months, thereby permitting Michelle to remain in Richard's custody, to the prejudice of Diana. She contends that in deciding custody disputes, courts tend to leave a child in the

---

1. The face of the judgment recites it was entered September 29, 1982, but the docket sheet shows it was filed September 30, 1982.

custody of the parent who already has custody, being reluctant to uproot the child by transfer to a new home. Thus, she reasons, the trial court, by its delay in deciding the case, "created an important factor in the determination of custody."

Diana ascribes no ulterior motive to the trial court in postponing its adjudication, and nothing in the record suggests that the trial court did so for the purpose of strengthening Richard's case. Accordingly, the issue is simply whether the delay itself was so prejudicial to Diana as to constitute reversible error.

Diana cites us to *In re the Marriage of B__ A__ S__*, 541 S.W.2d 762, 768 (Mo.App. 1976), where it is said that the pattern of custody of the three children involved there (ages 12, 11 and 8) during the two years of separation preceding the dissolution should not lightly be discarded, and to *Feese v. Feese*, 613 S.W.2d 882, 886–87 (Mo.App. 1981), where it is observed that there is value in a child's being kept with the parent who has custody as against uprooting him and transplanting him in a new home. Based on these cases, Diana says that Richard's custody of Michelle for the two years and three months between the separation and the decree caused a situation where it was "almost impossible to realistically award custody" to her.

In weighing Diana's argument, we note that from the time of the separation (June 24, 1980) until March 9, 1982, there was an agreement between Diana and Richard that she would have custody of Michelle on alternate weekends from 6:00 p.m., Friday until 6:00 p.m., Sunday. During that 20-month period, Diana had custody of Michelle at the agreed times except for three occasions. Richard testified he denied Diana visitation on two of those occasions because of a medical dispute regarding Michelle, and that Diana did not exercise her visitation on the third occasion. Diana testified Richard denied her visitation all three times.

Regardless of who was at fault on the third occasion, it is clear that Diana was not cut off from Michelle during the first 20 months of the separation. Indeed, in addition to the visitation on alternate weekends, Diana had custody of Michelle for a week during the summer of 1981.

The order of March 9, 1982, granted Diana the same alternate weekend visitation she previously had under the agreement: 6:00 p.m., Friday until 6:00 p.m., Sunday. Additionally, Diana was granted two weeks' temporary custody of Michelle during the summer, and certain specified visitation on designated holidays. At the contempt hearing on September 30, 1982, Diana complained that on two occasions, Richard was late in delivering Michelle to her at the start of the weekend visitation. Diana did not, however, accuse Richard of withholding visitation in any instance when she was entitled to it.

It is thus clear that Diana had regular and substantial contact with Michelle for the duration of the proceedings below. This is not a case where a young child became estranged from a noncustodial parent by prolonged isolation during the pendency of a dissolution proceeding, and there is nothing in the record to suggest that the trial court based its custody decision on any such supposition.

Additionally, we note that Michelle was only 4 years and 1 month old when judgment was entered; consequently, awarding custody to Diana would not have required a change in schools or a disruption of long-standing friendships or community ties formed while Michelle was residing with Richard. Accordingly, even if, as Diana contends, there is judicial reluctance to disturb existing arrangements in custody cases, the usual reasons for such hesitancy are absent here.

Finally, and most important, we know, without speculating, why the trial court decided the custody issue the way it did. The decree states, in pertinent part:

"The Court finds that [Michelle's] best interest will be served by placing primary custody of the child in the home of Richard L. Plank. The Court finding that said home is the more stable of the

two. The Court expresses concern because of the immature acts of both parents but finds that the father has consistently held good employment and established a stable home which at this time is needed most by the child. The Court finds that the mother is more demonstrative in her display of affection for the child and for that reason more liberal visitation is being granted as the child also needs that."

These findings refute Diana's contention that her claim to custody of Michelle was prejudiced by the leisurely pace of the proceedings below.

■ In sum, while we do not endorse the trial court's delay in reaching its decision, we reject Diana's contention that it requires reversal in the circumstances here.

Diana's two remaining points are closely allied, and we consider them together. She asserts the custody decision lacks substantial evidentiary support, in that the court's specific findings are "without basis in the record," and there is insufficient evidence to rebut the tender years presumption. She also contends the trial court failed to weigh Richard's alleged unfitness, and how Michelle was affected by both parents' behavior.

■ In examining these assignments of error, we are cognizant that as this was a court-tried case, we must affirm the judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976); *Ware v. Ware*, 647 S.W.2d 582, 583[1] (Mo.App.1983). Where there is a conflict in the evidence, the trial court has the prerogative to determine the credibility of the witnesses, accepting or rejecting all, part or none of the testimony. *Ware*, 647 S.W.2d at 583-84[2]. Further, we must accept as true the evidence and permissible inferences therefrom favorable to the prevailing party and disregard the contradictory evidence. *Id.* at 584[4]. Our power to set aside a custody award on the ground that it is against the weight of the evidence must be exercised with caution and on a firm belief that the judgment is wrong. *In re the Marriage of B— A— S—, supra,* 541 S.W.2d at 763[2]. We will not disturb a custody award unless the trial court abused its discretion or unless we are convinced that the child's welfare requires some disposition other than that made by the trial court. *In re the Marriage of L— M—,* 541 S.W.2d 760, 761[2] (Mo.App.1976).

One of the specific findings Diana attacks is the finding that Richard consistently held good employment. She says this finding is refuted by Richard's admission that he was unemployed at the time of the hearing on April 2, 1982, and was receiving "unemployment compensation" of $105 per week. This period of unemployment began in October, 1981.

We note, however, that it appears Richard was employed the rest of the time the case was pending below. At the time of the separation (June 24, 1980) he was self-employed "cutting cord wood." Soon after the separation he was hired as a truck driver for a plastics company, and his "net take home earnings on a monthly basis" were approximately $650 between November, 1980, and March, 1981. At the time of the first hearing (April 24, 1981) Richard was earning approximately $400 per month, working three days per week. The reason for the cutback is not disclosed.

At the time of the hearing on September 30, 1982, Richard was employed by the Columbia public schools as an instructor in the adult vocational education program. His earnings there are not revealed, but he was working five days per week, 48 weeks per year.

■ Recognizing that the evidence about Richard's employment is not as complete or precise as it might have been, we nonetheless find it sufficient, viewed in the light most favorable to him, to show he was employed in jobs appropriate for his skills for all but about seven months of the two years and three months between the separation and the decree. We are therefore

unpersuaded by Diana's argument on this issue.

■ We likewise reject her contention regarding the tender years presumption. We are aware that numerous custody cases have said, in substance, that where circumstances are essentially equal between parents, the mother is presumed to be the better custodian for a child of tender years. See *In re the Marriage of Carmack*, 550 S.W.2d 815 (Mo.App.1977); *In re the Marriage of B— A— S—, supra*, 541 S.W.2d 762; *In re the Marriage of Zigler*, 529 S.W.2d 909 (Mo.App.1975). We also recognize, however, that other cases have said, in substance, that this maxim is not conclusive, and does not prevent placement of custody with the father if that will serve the child's best interest. *In re Marriage of Kuhl*, 640 S.W.2d 828 (Mo.App.1982); *Gillespie v. Gillespie*, 590 S.W.2d 420 (Mo. App.1979); *N.J.W. v. W.E.W.*, 584 S.W.2d 148 (Mo.App.1979).

Additionally, Richard reminds us that § 452.375, RSMo 1978, the statute pertaining to child custody determinations, was amended effective August 13, 1982, by Laws 1982, p. 641. The amendment included the following:

"2. As between the parents of a child, no preference may be given to either parent in the awarding of custody for the sole reason that the parent is the mother or the father of the child, nor because of the age or sex of the child."

This amendment was in effect when the judgment was entered.

■ Irrespective of the amendment, however, we find the evidence sufficient to support the trial court's decision that Michelle's best interest will be served by placing her in the primary custody of Richard. There was substantial evidence that Richard is more attentive to Michelle in the areas of feeding, bathing, dressing, discipline and learning, than is Diana. There was also testimony unfavorable to Diana in certain other respects that we need not describe further. Having thoroughly studied the transcript and the exhibits that accompany it, giving due attention to the evidence unfavorable to Richard, we hold that the evidence, viewed most favorably to the result below, is sufficient to support the trial court's choice of Richard as primary custodian.

In reaching this conclusion, we have not overlooked the trial court's expression of concern about the immature acts of both parties. The record justifies the trial court's uneasiness. Nonetheless, given the broad discretion vested in the trial court in child custody cases, *C.A.Z. v. D.J.Z.*, 647 S.W.2d 895, 896[1] (Mo.App.1983), and the admonition that each case involving custodial provisions for a child must be judged on its own facts, with the question of the child's welfare controlling the outcome, *id.* at 896[4], we cannot say, on the record before us, that the trial court erred in deciding the custody issue the way it did.

Judgment affirmed.

GREENE, C.J., and HOGAN, MAUS and PREWITT, JJ., concur.