**Shelley R. REEVES,**
**Petitioner/Appellant,**

v.

**Robert R. REEVES,**
**Respondent/Respondent.**

No. 66007.

Missouri Court of Appeals,
Eastern District,
Division One.

June 20, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 14, 1995.

Application to Transfer Denied
Sept. 19, 1995.

James P. Leonard, Padberg, McSweeney, Slater, Merz & Graham, St. Louis, for appellant.

Richard W. Fischer, Stern, Frapolli & Ahlquist, St. Louis, for respondent.

REINHARD, Presiding Judge.

Wife appeals from the marital property distribution provisions of a February 15, 1994 decree of dissolution. We affirm.

Husband and wife were married on May 26, 1979. Three children were born of the marriage, B.W.R., born March 25, 1980; L.R.R., born September 30, 1981; Z.T.R., born February 4, 1987. Both parties waived maintenance and agreed to other matters relating to child custody. The decree of dissolution placed primary physical custody of the children with wife. Husband was ordered, *inter alia*, to pay $840 per month in child support. The principal issue for determination by the court was the division of the marital property.

The parties had two houses; both were conceded by the parties to be marital property. One, at 2400 Hord Avenue in Jennings, Missouri, was purchased by the parties a few months before their marriage in 1979. It

was the family home until husband and wife separated, and wife and children continued living there up to dissolution. Wife was a licensed beautician and had a beauty shop in the Jennings house. At the time of the hearing her income from the shop was $75 per month (this was in addition to what she earned at her full-time job). Upon separation, husband purchased the other house, at 10515 Durness in St. Louis. He continued to live in the St. Louis house until dissolution.

The Jennings house was the only one with significant equity. It and the pension from father's electrical worker's union constituted the marriage's main assets. Wife valued the Jennings house at between $45–48,000 and husband at $60,000. The court found that neither party had separate property and divided and valued the marital property thus:

A. Marital Property
   Awarded to Wife             Value

| | | |
|---|---|---|
| 1) | 1980 Ford Van | $ 1,500.00 |
| 2) | 2400 Hord Ave., Jennings, MO | $ 59,000.00 |
| | less home equity loan | (10,000.00) |
| | | $ 51,500.00 |
| 3) | Proceeds of personal injury claim | $ 3,333.00 |
| | | $ 52,333.00 |
| 4) | Payment to be made from Husband to Wife | $ 17,000.00 |
| | | $ 70,883.00 [1] |

B. Marital Property
   Awarded to Husband

| | | |
|---|---|---|
| 1) | 1989 Ford F150 | $ 6,000.00 |
| 2) | 10515 Durness, St. Louis, MO | negligible |
| 3) | IBEW Pension | $ 81,000.00 |
| | | $ 87,000.00 |
| 4) | Payment to be made from Husband to Wife | (17,000.00) |
| | | $ 70,000.00 |

The $17,000 cash award to wife from husband was, according to the court, "an additional share of marital property." This was in furtherance of the court's intention "to set off the marital property into approximately equal shares." The $17,000 cash award was due within 240 days of the effective date of the decree, "plus interest at nine percent (9%) after the date due if not paid."

On appeal, wife asserts:

The trial court erred in awarding wife a cash judgment of $17,000 as part of the property award in that said award was an abuse of discretion and created an inequitable distribution of the marital estate because said award was unsecured, subject to discharge in bankruptcy, and virtually uncollectible through execution resulting in husband receiving an unequal share of the marital estate.

■ The trial court is vested with considerable discretion in dividing marital property and an appellate court will only interfere if the division is so heavily weighted in favor of one party as to amount to an abuse of discretion. *Allen v. Allen,* 770 S.W.2d 529, 530 (Mo.App.1989). The court is unfettered by rigid methods or mechanics. *Calia v. Calia,* 624 S.W.2d 870, 872 (Mo.App.1981). It is well-settled that a court can order cash awards to effect a just division of marital property. *Allen,* 770 S.W.2d at 530. This device is employed when it is impossible or imprudent to divide property in kind. *Calia,* 624 S.W.2d at 872.

Wife makes no claim that an equal disposition of property would be unfair or inequitable nor does she challenge the court's valuation of the marital property. There was no evidence of marital misconduct on the part of either party. The court felt, properly in our opinion, the division should be relatively equal. Mother's argument is that the court should have ordered a sale of the Jennings house and equally divided the sale's proceeds and equally divided husband's pension.

■ The pension and the Jennings house are the only two marital assets that have substantial value. Neither party wanted the Jennings house. Wife had lived in the marital home for fifteen years and that home remained hers and the children's residence after separation.[2] She had a beauty shop in

---

1. The trial court made a computational error and entered a total of $69,333.00 for wife's total.

2. The trial court stated it was guided in its division of marital property by, *inter alia,* the "custo-

that house from which she derived extra income. There is no evidence as to when the pension plan vested or when its benefits could be received. From the ages of the parties, it may be many years before wife could receive any benefits from the pension if the court had awarded her an interest in it.

The trial court's method of equally distributing the marital property was not the only one available to it. It was, however, a feasible one in this case of limited marital assets. We conclude that the court's order setting off the pension plan to husband, the Jennings home to wife, and ordering equalization between the value of property awarded with a cash judgment was not an abuse of the court's broad discretion.

Wife's contention that the cash award may be uncollectible is speculation. She relies on *Schneider v. Schneider*, 761 S.W.2d 760 (Mo. App.1988), to support her assertion that any cash award should have been secured by a lien. *Schneider* concerned an appeal where, unlike here, the wife contended the proportion of marital property awarded her was too small. The husband was awarded property with a value of approximately $45,000. The wife was awarded actual marital property with a value of only $3,100, but the husband was ordered to pay the wife's student loan in the amount of $22,000. We found that this distribution was not unfair. Without a request, we then stated:

> The decree provides wife with no security in the event husband fails to meet the obligations of the loan. The loan remains her obligation as between her and the

lender. Elimination of this debt is the *major item* which she has received from this dissolution and the decree requiring payment by husband is an indirect award of marital property to her. She is entitled to security for this obligation.

*Id.* at 761 (emphasis added). The case was remanded to the trial court to amend the decree to provide security, "[p]resumably through a lien on the McCausland property (the marital home)" which had been awarded to the husband. *Id.*

In this case, as wife notes, there was no property after the court's disposition on which a lien could be imposed. Moreover, in *Schneider*, the unsecured obligation of husband (the "major item" awarded wife) constituted approximately eighty-six percent of wife's distribution; the unsecured cash award in the instant case is approximately twenty-four percent. *Schneider* does not support a reversal of this award with a new order of distribution and wife has cited no cases (nor has our research found any) which would support such action.

The general rule is that a court "*may* secure the performance of an act or the future payment of money, lawfully ordered in the disposition of marital property, by the imposition of a lien upon marital property distributed to a spouse." *Costley v. Costley*, 717 S.W.2d 540, 544 (Mo.App.1986) (emphasis added). However, "[i]t is also permissible to order a cash transfer without linking it to any particular asset." *Calia*, 624 S.W.2d at 872.[3]

---

dial arrangements for the minor children." It is a reasonable inference that the trial court sought to have the children remain in the family home. *See* § 452.330(5), RSMo 1994. There was no indication in the record that the St. Louis house was suitable for this purpose.

3.  Wife points to cases (she calls them the "overwhelming majority") where the courts have provided security interests in identifiable property for cash awards. She cites *Allen, supra; In re Marriage of Pine*, 625 S.W.2d 942, 946 (Mo.App. 1981) (lien ordered by appellate court on remand after property distribution reversed); *Jamison v. Jamison*, 828 S.W.2d 377 (Mo.App.1992); and *Schneider, supra.* However, we note just a few other cases where no security was apparently provided. *See, e.g., In re Marriage of Pehle*, 622 S.W.2d 711, 713 (Mo.App.1981); *Fort v. Fort*,

670 S.W.2d 173, 175 (Mo.App.1984) (husband awarded pension plan worth $10,500 and wife awarded $5,000 over five annual installments); *Scott v. Scott*, 645 S.W.2d 193, 195 (Mo.App. 1982); *Ploch v. Ploch*, 635 S.W.2d 70 (Mo.App. 1982); *Beckman v. Beckman*, 545 S.W.2d 300 (Mo.App.1976). In none of the above cited cases, except *Pehle*, was the issue of security a basis of the appellate court's decision or apparently even broached by the parties.

In *Pehle, supra*, the wife argued that the court erred in decreeing that a $45,000 cash award (payable over 120 months) was not to be a lien on husband's property. *Pehle*, 622 S.W.2d at 713. She based her argument on § 452.080, RSMo 1978, which provided that alimony in gross shall be a lien on the debtor's real estate. We noted that her argument had a "faulty prem-

We find no abuse of the court's discretion and affirm the court's judgment.

GARY M. GAERTNER, J., concurs.

CRAHAN, J., dissents in separate opinion.

CRAHAN, Judge, dissenting.

I respectfully dissent.

This case is not about whether the trial court erred in failing to secure the $17,000 judgment awarded to Wife against Husband with a lien. As the majority acknowledges, Wife's position is that there is no suitable property on which a lien could be imposed. Rather, the issue in this case is whether the trial court's division of the marital property in fact accomplishes the trial court's stated intent "to set off the marital property into approximately equal shares." Wife complains that the record in this case does not support the trial court's use of a "cash" award to equalize the division of property, nor does it support the conclusion that the provision for such an award results in an "approximately equal" division of the marital property. She is correct on both counts.

The parties were married in May, 1979, about a year after Wife completed high school. Shortly before the marriage, they purchased what became the marital home located on Hord Avenue in Jennings, Missouri, a suburb of St. Louis. The home was nearly 90 years old when purchased and approximately 103 years old at the time of trial. At the time of purchase, the house had been condemned and the parties had to make a number of major repairs to obtain an occupancy permit. However, a number of repairs specified by the City of Jennings were never made. The purchase price in 1979 was $15,500.00, financed by the owner. About three years later, a dispute with the owner over responsibility for repairs was settled whereby the couple obtained title without any further payments on the home.

At the time of the hearing, the City had again condemned the large porch on the home. In 1991, Wife obtained an estimate of $7,000.00 for repair of the porch. Based on two appraisals, Wife valued the home at $45–48,000.00. Husband estimated the value at $60,000.00. It is not clear from the record whether either the appraisals or Husband's estimate were based on the value of the home "as is" or on the assumption that repairs would be made. The home was also encumbered with a lien for $10,000.00 as a result of a home equity loan, the proceeds of which had been expended by the parties.

The parties had three sons, ages 13, 12 and 7 at the time of the decree. The eldest boy is learning disabled. All three sons attend parochial schools, the cost of which is to be shared equally by the parties.

Wife held a series of part-time jobs until the parties separated. At the time of the hearing, she was employed full-time as a collector of past due accounts for an educational publishing company, where her gross income was $1,040.00 per month. Wife supplemented this income by giving haircuts and permanents to friends in her spare time, which netted an additional $75.00 per month. Wife has no pension.

Husband is a union electrician with earnings imputed by the trial court at $3,000.00 per month. Husband has a pension, the marital portion of which was valued at $81,000.00.

Aside from personal property, the parties' only other assets were a fourteen year old van, valued by the court at $1,500.00; a five year old pickup truck, valued at $6,000.00; Wife's claim for personal injuries resulting from an automobile accident, valued at $3,333.00; and Husband's residence, which the trial court found to be of negligible value due to the existence of a mortgage approximating the fair market value. Neither party had any appreciable liquid assets in securities or bank accounts.

By agreement, Wife was awarded custody of the three boys. In accordance with the

ise" because the award was not alimony in gross, but rather, a division of marital property. *Pehle,* 622 S.W.2d at 713. We found her contention to be without merit. *Id.; see also Rickard v. Rickard,* 428 S.W.2d 919, 929 (Mo.App.1968).

We view the above compilation of cases as a demonstration of a trial court's discretion in distributing marital property and again note that the trial court is unfettered by rigid methods or mechanics.

child support guidelines, Husband was ordered to pay monthly child support of $840.00. Husband was also ordered to maintain health insurance for the boys. The marital property was divided as follows:

**Award to Wife**

| | | |
|---|---|---|
| 1. | Marital home | $ 59,000.00 |
| | Less home equity loan | (10,000.00) |
| | | $ 49,000.00 |
| 2. | Proceeds of personal injury claim | $ 3,333.00 |
| | | $ 52,333.00 |
| 3. | 1980 Ford Van | $ 1,500.00 |
| | | $ 53,833.00 |
| 4. | Payment to be made from Husband to Wife | $ 17,000.00 |
| | | $ 70,833.00 |

**Award to Husband**

| | | |
|---|---|---|
| 1. | Husband's residence | negligible |
| 2. | 1989 Ford F150 | $ 6,000.00 |
| 3. | IBEW Pension | $ 81,000.00 |
| | | $ 87,000.00 |
| 4. | Payment to be made from Husband to Wife | (17,000.00) |
| | | $ 70,000.00 |

The trial court said in the decree that its intent was "to set off the marital property into approximately equal shares." Wife makes no contention that the trial court abused its discretion in deciding that the parties should receive approximately equal shares. Rather, Wife maintains that the court abused its discretion by ordering a cash award instead of dividing the property equally and that, even with the provision for a cash award, the shares awarded Husband and Wife are not "approximately equal."

Section 452.330 RSMo 1994 provides that the trial court "shall *divide* the marital property in such proportions as the court deems just after considering all relevant factors...." (emphasis added). Case law, however, has established the inherent equitable power of the court to order cash awards to effect a just division of the marital property. *Claunch v. Claunch*, 525 S.W.2d 788, 791 (Mo.App.1975). This device may be employed when it is "impossible or imprudent to divide a piece of property in kind." *Calia v. Calia*, 624 S.W.2d 870, 872 (Mo.App.1981).

In this case, there is nothing in the record to support a finding that it would be either impossible or imprudent to divide Husband's pension, nor did the trial court make any such finding. Pensions are readily susceptible of division through the use of a qualified domestic relations order (QDRO), a device specifically mentioned in the statute. *See* § 452.330.5 RSMo 1994. Nor does the record support a finding that a cash payment was necessary to effect a "just division" of the property. Wife has no pension. Husband's pension was acquired with marital funds presumably to provide for the needs of both parties in their later years.

The marital residence was not divisible in kind. However, neither party wanted it and Wife specifically requested that the trial court order the house sold and that the proceeds be applied to pay off the loan and then divided equally between the parties. Had the court granted this request and divided the marital portion of Husband's pension equally with a QDRO, it would have accomplished an "approximately equal" division of the marital property without the necessity of ordering any payment from one party to the other. Indeed, it would have eliminated any risk that an unequal division would occur.

As Wife points out in her brief, the risk that a grossly unequal division will occur is substantial. Wholly aside from the erroneous value ascribed to the payment to be made by Husband discussed *infra*, Wife bears the entire risk that the marital home will not bring anywhere near the value assigned by the court. Despite recent appraisals in the range of $45–48,000.00 and undisputed evidence that the porch had been condemned, the court essentially accepted Husband's value and assigned a value of $59,000.00. It is clear that Wife has no funds to make the necessary repairs. Thus, if a sale occurs, it will not be under optimum conditions. Should the property bring only an amount in line with her appraisals, Wife will have no recourse to obtain her rightful share of the marital property as intended by the court. On the other hand, if the property was ordered sold and the proceeds distributed to the parties as Wife proposed, the risk that the property might bring less than the assigned value would be borne equally by the

parties, assuring an "approximately equal" division as the court intended.

I cannot agree that the trial court's disposition of the marital residence can be justified by the trial court's boilerplate reference to custodial arrangements for the children. Maj. op. at 413–14, n. 2. The undisputed evidence that portions of the home had been condemned and that it was in need of substantial repairs which Wife had no visible means to accomplish suggests that the home was not a fit, let alone a desirable place to raise the children. Nor does the fact that Wife used the home to perform haircuts and permanents in her spare time support the award. There was no evidence that either the location or any fixtures of the home were essential to that pursuit. Wife would presumably be the best judge of that and she didn't want the home.

In sum, there is no evidence that the $17,000.00 award from Husband to Wife was necessary to effect a just division of marital property. Nor was there any evidence or finding that it would be impossible or imprudent to divide the property into approximately equal shares without such an award. Although the majority cites several cases in which cash awards have apparently been utilized without security, in none of those cases was the use of such an award an issue on appeal. *See* Maj. op. at 414, n. 3. They certainly cannot be read as endorsements of the routine use of cash payments without evidence or any finding that a just division would otherwise be imprudent or impossible. As those terms imply, the use of cash awards is not a preferred mechanism for division of property and should be restricted to cases where a just result cannot be accomplished by other means. Most typically, this occurs in situations where one party is awarded income-producing property which would yield less value if liquidated. *See e.g., Calia,* 624 S.W.2d at 872; *Jamison v. Jamison,* 828 S.W.2d 377, 378 (Mo.App.1992); *Beckman v.*

*Beckman,* 545 S.W.2d 300, 301–02 (Mo.App. 1976). Such considerations are not present here. Indeed, Husband was not awarded any assets which could be used to satisfy the judgment for $17,000.00 in favor of Wife.[1]

The fact that Husband has no assets available to satisfy the judgment underscores the second problem with the award. When a trial court awards a judgment against a party without resources to pay it, it is not *dividing* the property; it is *creating* fictional property. Although the trial court awarded Wife a judgment for $17,000.00, it is not worth $17,000.00. The record conclusively establishes that Husband doesn't have $17,000.00 and does not have any lienable assets sufficient to satisfy such a judgment. Indeed, it is clear from the record that Husband could extinguish the judgment through the expedient of bankruptcy any time he chooses. Although it is speculative whether he would choose to do so, the fact that he could do so at any time obviously affects the value of the judgment.

Fair market value is generally acknowledged to mean the price the property would bring when offered for sale by one willing but not obliged to sell it, and when bought by one willing or desirous to purchase it but not compelled to do so. *See* M.A.I. 16.02. Surely no prudent banker or businessman would pay $17,000.00 or anything close to it for an assignment of Wife's judgment. A judgment against a party with insufficient lienable assets who has the ability to extinguish it in bankruptcy at any time is practically worthless.[2] Under such circumstances, the record does not support the trial court's valuation of the judgment at $17,000.00, nor does it support the conclusion that the division of marital property accomplishes the trial court's stated intent of dividing the property into approximately equal shares.

Husband would have us ignore the obvious disparity in the division of marital property by deferring to the trial court's broad discretion. He correctly points out that the trial

---

1. In contrast, in upholding the cash transfer ordered in *Calia,* the court took note of the fact that the husband had access to sufficient cash to pay the award. 624 S.W.2d at 872.

2. Nor does the availability of garnishment significantly affect the value of the judgment. The debt

could still be extinguished at any time, and even if it was not, Husband does not dispute Wife's calculation that, given the statutory limits on garnishment, Husband's child support obligations and modest income, it would take more than 30 years to collect the judgment.

court was not required to divide the property equally and might well have been acting within the broad discretion conferred by the statute if it had made no cash award at all. This argument overlooks the fact that the trial court expressly declared that it was exercising its discretion to divide the property into approximately equal shares, a determination neither party questions on appeal. Having exercised its discretion to divide the marital property into approximately equal shares, the issue then becomes whether the record supports the conclusion that what the parties were awarded is, in fact, roughly equal. This is a matter of evidence, not discretion. A trial court may well enjoy the discretion to decide that one party should receive steak and the other hamburger. Having declared its intent that both parties are to receive steak, however, it does not have the discretion to award one party hamburger and call it steak. Whether what was awarded is hamburger or steak is a matter of evidence. If the record shows that one party in fact received hamburger and the other received steak, the order cannot stand.

Support for this proposition can be found in *Manor v. Manor,* 682 S.W.2d 93, 95 (Mo. App.1984). In that case we were faced with a situation where the record did not support a cash award of $129,000.00 to the wife without a corresponding reduction of the husband's share. After making such a reduction, we found that the result would be an award of 60% of the property to the wife and 40% to the husband. *Id.* Although acknowledging the trial court's discretion to make such an unequal award, we nevertheless remanded because the trial court's intent as indicated by its original but erroneous 51% to 49% division of the property appeared to be to divide the property into approximately equal shares. *Id.* If this was the trial court's intent, our correction of the mathematical error would have produced a result inconsistent with that intent. Therefore, remand was required even though the resulting proportions would have been upheld as within the trial court's discretion had it so divided the property in the initial decree. *Id.*

In this case, there is no question about the trial court's intent because it said in the decree that its intent was to divide the property into approximately equal shares. For the foregoing reasons, it did not, in fact, accomplish that result. Accordingly, I would reverse the judgment of the trial court and remand with directions to divide the marital portion of the pension equally and to order the marital home sold, with the proceeds applied to pay off the home equity loan and expenses of sale and then divided equally among the parties.