In re **MARRIAGE OF Jane Lee and William Robert CAVITT.**

Jane Lee **CAVITT, now Jane Lee Surles, Respondent,**

v.

William Robert **CAVITT, Appellant.**

No. 38515.

Missouri Court of Appeals,
St. Louis District,
Division Four.

March 14, 1978.

■

Edward J. Delworth, Overland, for appellant.

Dennis Taylor, Clayton, for respondent.

ALDEN A. STOCKARD, Special Judge.

This is an appeal by the father from a judgment which modified a previously entered decree of dissolution of marriage pertaining to the custody of an eight year old female child. We affirm.

The decree of dissolution of marriage was entered March 3, 1975. Primary custody of the child was granted to the mother with temporary custody in the father on stated weekends. On March 25 the father filed a motion to modify in which he alleged that the mother had remarried, and that she had removed the child from the State of Missouri, thereby denying him the right of temporary custody as provided in the decree of dissolution. On June 12 a hearing on the motion was held, or at least started, with the mother's counsel present. The court ordered that "Pending hearing and disposition of [the father's] motion" the mother was to "comply with the temporary custody provisions of the decree forthwith by sending the child * * * by airplane" to the father. The mother did not comply with this order, but on June 26 filed a motion to modify in which she alleged that she had remarried and that by reason of her husband's employment she was forced to move to California. She prayed for an order granting to her the right to remove the child to California and for such other orders deemed proper. On July 9 the court entered an order in which it recited that a hearing was held on July 3 on the father's

motion and that the mother had not complied with the order of June 12. The court then entered an order that the father "shall have the right of custody of [the child] for the balance of the summer months of 1975 until September 1, 1975 and until further order of this court." Relying on this order, and with the assistance of officials of the State of Oregon where the mother and her husband had moved, the father obtained actual custody of the child and returned her to the State of Missouri. No additional hearing was held or order made prior to September 1, 1975, and on November 19 the mother filed a motion that the father be adjudged in contempt for his refusal to relinquish custody to the mother, and in the alternative a motion to modify "the child custody provisions * * * as modified on July 9" to "reflect the geographical separation of the parties." A hearing on this motion was set for December 1, and on that date the father filed a motion to modify in which he alleged the mother had moved away from Missouri and that it was "in the best interest of the child that she remain in the full custody" of the father. After hearing and on December 5 the court entered an order on January 21, 1976, which in its material parts was as follows:

"The custody of the minor child of the parties, * * * shall remain, on an interim basis, with the [Appellant] until the end of the child's current school year, the Court specifically retaining jurisdiction of the Motions to Modify in order for the Court, upon a review of the matter during or at the end of the child's school year, to enter an order as to the permanent custody and temporary custody arrangements with regard to said child and as to child support for said child. The Court is of the opinion that the conclusion of the child's current school year will constitute a change in circumstances."

The above order, by reason of the language used was not intended to dispose finally of the pending motions to modify filed by each party, and on August 13, 1976 a hearing was held on the pending motions. On August 18, the court entered its order modifying the decree to provide that the mother "be awarded primary custody" of the child with temporary custody at stated times in the father.

The father has appealed, and by his first point asserts the trial court erred in changing the custody of the child from him to the mother "as there was not a sufficient showing of change of circumstance to warrant a change of custody."

In his argument under this point appellant asserts that the trial court "awarded the custody of the minor child to [him] on July 9, 1975 until further order of the court," and "having awarded the custody of the child [to him], it is presumed that he is a fit and proper party to have custody," and that it then "becomes incumbent upon the party seeking a change of custody to show a change in circumstances since the last order of court and that such a change of custody would be for the child's welfare."

Appellant relies on the principles stated in In re Wakefield, 365 Mo. 415, 283 S.W.2d 467, 471 (Mo. banc 1955) that an "order awarding the custody of a minor child, and contained in an unappealed decree of divorce, is a final order entitled to the force and effect of a final judgment, unless and until modified by the court making the decree," and in M_____ L_____ v. M_____ R_____, 407 S.W.2d 600 (Mo.App. 1966), that "a custodial order once made becomes as conclusive as any other order * * * and may be disturbed only upon proof of changed conditions subsequent to the entry of the order coupled with a showing that modification of the order would promote the best interests of the child or children involved." He then argues that "There is little change in circumstances of the parties since the order of the court on July 9, 1975."

We are in agreement with the two cases cited by appellant, but in relying on them appellant has misconstrued the effect of the order entered on July 9, 1975. The decree making a permanent award of custody was the one entered on March 3, 1975. The order of July 9 was an interim order, and it provided only that the father should have

custody "for the balance of the summer months of 1975 until September 1, 1975, and until further order of this court." It is clear that the court appreciated that a change in the circumstances had occurred by reason of the mother moving out of the State, but this order did not, and obviously was not intended to constitute a final adjudication of the issue of custody. Subsequently on January 21, 1976 the court entered another order, expressly stated to be another interim order, awarding custody to the end of the school year. At the hearing on the motions to modify held on August 13, 1976, the court for the first time subsequent to March 3, 1975, purported to make a final determination as to which parent should have primary custody.

The issue on this appeal is not whether there was a change of conditions subsequent to the issuance of the interim order on July 9, 1975, but whether in view of the changed conditions resulting from the mother moving, first to California and then to Oregon, the award of primary custody to the mother with temporary custody to the father is in the best interest and welfare of the child. We note, however, that appellant does not specifically present that issue. Because this is a child custody case we will review the record to determine whether the determination of custody by the trial court complies with that standard. In doing so we must first consider the second and remaining point in appellant's brief.

Appellant asserts that the trial court "erred in admitting into evidence the hearsay testimony of the deputy juvenile officer containing statements of third parties about [1] the character of [the mother's] present husband and [2] arrest records of appellant thus denying him the right of cross examination, and [3] in admitting the conclusionary statements contained therein as they invaded the province of the court."

 Laurie Lakey, a deputy juvenile officer of St. Louis County, testified that pursuant to an order of the court she had made a "child investigation study." Presumably this was done pursuant to V.A. M.S. § 452.390, Laws of Missouri 1973 p.

470. She testified at length concerning her investigation and as to what she saw at the father's house and at the home of his aunt who took care of the child during week days and with whom the child frequently stayed. She then testified that she wrote to "a social agency" in Oregon and asked that it interview the mother and her husband, and that she evaluate the home there and obtain information concerning the child's progress in school. As soon as she mentioned the Oregon report, appellant objected to any reference to its contents on the basis it was hearsay. The objection was overruled, and the deputy juvenile officer then related, in substance, everything contained in that report. The witness stated that the Oregon report was attached to her report, and that in making her recommendations concerning custody of the child she had taken into consideration the information contained in the Oregon report. The report of the deputy juvenile officer, to which the Oregon report was attached, was admitted into evidence. The Oregon report consisted entirely of hearsay, and much of the report prepared by the deputy juvenile officer was hearsay and consisted of conclusions.

Section 452.390, supra at pp. 704–705 provides that a court may order "an investigation and report concerning custodial arrangements for [a] child," and that "the investigator shall furnish his report to counsel and to any party not represented by counsel" at least ten days prior to the hearing on the issue of custody. It also provides that "No one else, including the court, shall be entitled thereto prior to the hearing," but that "any party to the proceeding may call as witnesses the investigator and any person whom the investigator has consulted." This clearly indicates that the report, as such, is not admissible in evidence over objection unless the contents, or portions thereof, are otherwise admissible under the rules of evidence. The deputy juvenile officer could testify to what she saw during her investigation, but the admission into evidence of the hearsay testimony concerning the report, and the report itself, was error. *Benjamin v. Benjamin*, 370 S.W.2d 639 (Mo.

App.1963); 24 Am.Jur.2d Divorce and Separation, § 793. We are of the opinion, however, that the erroneous admission of this evidence does not require a reversal of the order determining custody.

Rule 73.01 provides that in a case tried before the court without a jury, the appellate court "shall review the case upon both the law and the evidence as in suits of an equitable nature." In such a review " 'Prejudicial error' or 'reversible error' in the admission or rejection of evidence is not an issue on an appeal * * *. The issue is whether the evidence should have been admitted and considered, or rejected and not considered, and when that issue is determined the next issue is what the judgment of [the appellate] court should be, based upon a consideration of the competent and admissible evidence." *Menos v. Hodges*, 499 S.W.2d 427, 429 (Mo.1973). We shall review this case upon the law and the evidence, but in doing so we shall not take into consideration any of the improperly admitted evidence which appellant has properly challenged on this appeal.

The mother and her husband live in a tri-level house in Aloha, Oregon that was purchased for $40,000. The husband is manager of a K–Mart store. The mother is not employed outside the home but devotes her time to being a housewife. When the child was with her mother she attended a nearby school, and the child's progress there was very good or above average. The mother served as a "teacher's aide" at school, and she was a Brownie Leader in the troop to which the child belonged. The child loves her mother, and according to the mother the child and her stepfather get along very well, but there was some indication from the child that she did not like him, at least not in the way she felt about her father. When the child was with the father, the mother would send her clothing and toys. There is nothing in the record to indicate that the mother's home is not a suitable place for the child to live.

The father has a small brick house in Vinita Park in St. Louis County. The juvenile officer described it as a "neat and comfortable home," but when the child was in St. Louis she stayed with an aunt of the father during the week days. The aunt's home was described as "neat." The father would pick up the child after work each Friday and return her to the home of the aunt after the weekend. The child attended a nearby school where her progress was "low average." The aunt, age 74, has cared for the child before the dissolution of marriage, and there was a "warm relationship" between the two.

The father admitted, without further explanation except that he had frequently had pneumonia, that he had a "lung problem," but stated that it did not interfere with his work. He stated that he had smoked marijuana, but he saw nothing wrong in doing so except that it was against the law. Friends had come to his house and smoked marijuana in the presence of the child, but he said he did not smoke "too much" in her presence. He admitted that he had been convicted of possessing a controlled substance. The father had at his home an old Packard hearse, which would not run, in which there was a coffin. The purpose or use of this is not explained. He also had pierced the ears of persons at what the child called his "head shop" where he sold head bands, earrings, bracelets, and necklaces. The child's ears had been pierced and at least one of the father's ears had been pierced. The father admitted that prior to the marriage dissolution he belonged to what he called a "family riding motorcycle gang," but he stated that he had disposed of his motorcycle about three months before the trial. However, there was an indication that he continued to have some involvement, and the child testified that she was scared when she rode with her father because she was afraid she would fall off when they "took those fast turns." The father had "about twenty" tattoos on his body and "used to tattoo as a business." The child testified that when she was at her father's house she slept in her canopy bed, and that when her father's girlfriend stayed overnight the girlfriend slept "with my dad." The father stated that when they

would go on vacation, all three of them, that is, the child, the father, and the father's girlfriend, slept in the "camper trailer together." His aunt told the juvenile officer that the father had a "pretty ugly temper."

 The child testified with considerable affection for each parent, and also for her aunt. She expressed the wish to live with her father, but there was a strong indication that she believed, and possibly was caused to believe because she was told so by the aunt, that if she stayed in St. Louis her mother would return from Oregon. We recognize that § 452.375(2), Laws of Missouri, P. 189, provides that in determining custody one of the relevant factors is the wish "of [the] child as to his custodian," but we agree with R_____ S_____ M_____ v. J_____ D_____ M_____, 542 S.W.2d 361 (Mo.App.1976), that an eight year old child usually cannot have a rational basis for a preference as to which parent should have custody because, as we believe happened in this case, a child of that age frequently will make such decisions upon considerations unrelated to his welfare.

Our review of the evidence properly before us, and our consideration of all the attending circumstances convinces us that the trial court correctly and properly decreed that the mother should have primary custody of this eight year old female child with the father having only that temporary custody as stated in the decree.

The judgment is affirmed.

DOWD, P. J., and SNYDER, J., concur.