Orless STEMLEY, Appellant,

v.

**TWELVE TEN CORPORATION, former-
ly General Elevator Engineering
Company, Respondent.**

No. 49278.

Missouri Court of Appeals,
Eastern District,
Division Five.

April 16, 1985.

### ORDER

PER CURIAM:

Civil action in tort, seeking damages for
personal injury.  Petition dismissed.

Judgment affirmed.  Rule 84.16(b)

M———— D————, Appellant,

v.

C———— D————, Respondent.

No. WD 35645.

Missouri Court of Appeals,
Western District.

April 16, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
May 28, 1985.

Application to Transfer Denied
June 25, 1985.

Harold L. Caskey, Butler, Jeri Leigh Caskey, Alton, Henry Rothblatt, Fort Lauderdale, Fla., for appellant.

James K. Journey, Clinton, for respondent.

Before LOWENSTEIN, P.J., and NUGENT and BERREY, JJ.

LOWENSTEIN, Presiding Judge.

This appeal concerns the custody of T.D., the eight year old son of M.D. (mother) and C.D. (father) who were divorced on October 22, 1980. Custody was originally placed with the mother. In January, 1983 the father filed a motion to modify custody and on October 6, 1983 the court ordered T.D.'s custody transferred to the father. There were numerous other motions filed by both parents which do not need to be recited since they are not part of this appeal.

Since this was a court-tried case, this court's scope of review is that of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The following facts are favorable to the court's decree. At the time of the divorce and the original custody award to the mother, the boy was four years old. The mother was awarded a 60-acre farm where she and the child resided in a trailer for a little over a year. Then they moved to Belton where they rented an old farmhouse. Since then the mother and child would still spend every weekend at the trailer because the mother was maintaining a relationship with a married man, Bill who lived in Clinton, about 25 miles from the mother's farm.

The mother had a number of odd jobs since the divorce. She eventually got a job with the Jackson County Social Services, since she had both college training and work experience in that field. However, the job ended 14 months later when she resigned after an appeal of her termination. At the time of the custody hearing the mother had been unemployed for two months.

In the three years since the divorce the boy had some 20 babysitters, had been in day care, and most recently had been enrolled in a behavioral disorder class in the Belton school district, having been diagnosed as hyper-active. T.D. has had sexual adjustment problems as evidenced by his dreams about seeing Bill without his clothes, and a dream that he was lying on

top of his mother and had put his penis in her. T.D. also voiced concern to his father that he might have sex with a little girl down the street. The child's teacher related problems about him grabbing other boys, "in the penis area." She said he was aggressive with the other children, and in addition to the grabbing would fight and curse the other children.

T.D. was aware that his mother was "friends" with a married man. When Bill would come to visit T.D. would be sent to a babysitter or outside to play for a couple of hours. The mother regularly would drive some 25 miles to Clinton and would meet with Bill at 3:00 a.m. and accompany Bill in his trash truck apparently on his collection route which he did for a living. On at least five occasions T.D. was brought along on these early morning rendevous. The mother and T.D. would then return home later in the morning. A part-time babysitter testified that T.D. told her his mom and "Bill, the trash man" were running around without their clothes. During the period after the dissolution the mother had shown an interest in taking T.D. to live with her in an educational group called "Living Love" in "a place called Cornucopia, Kentucky."

The father remarried in 1981. He and his wife expressed a strong desire to have custody of the boy. They provide him a separate bedroom. With his mother T.D. slept on a couch, or on some occasions with her.

The applicable statute in this case is § 452.410 RSMo which says in pertinent part:

> The court shall not modify a prior custody decree unless ... it finds, upon the basis of facts that have arisen since the prior decree or were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child.

In conjunction with this, the court will consider the six factors as set out in § 452.-375(2) RSMo which include the wishes of the parents and child; interaction of child with parents, siblings and other significant persons; child's adjustment to home, school and community; mental and physical health of all parties involved; and the needs of child for a continuing relationship with both parents and their ability to fulfill that need.

Before dealing with some of the mother's specific issues on appeal, the court notes seven of her twelve points relied on deal with alleged errors in the various voluntary findings of fact made by the trial court. As this court said in *Swetnam v. U.S. By-Products Corporation*, 510 S.W.2d 829, 930 (Mo.App.1974), and as more recently stated in *Wills v. Alcorn*, 636 S.W.2d 142, 144 (Mo.App.1982), voluntary findings of fact "present no question for review other than as a general finding, and an appellant may not assign as error a specific finding of fact or conclusion of law." Therefore, none of those seven points present a reviewable issue for this court.

The first of the other five contentions concerns the trial court's exclusion of the opinion of the mother's expert, a psychologist, in answer to the following question: "Doctor, in your expert opinion, do you feel and as one who has made a thorough investigation of the facts of this case, *should the mother be awarded sole custody of this child?*" (Emphasis added.) The trial court's reason for its exclusion was that the opinion would invade the province of the court. Admission or exclusion of expert testimony by a trial court will not be disturbed on appeal unless it plainly appears that the trial court has abused its discretion. *Keller v. International Harvester Corp.*, 648 S.W.2d 584 (Mo.App. 1983). No discretion was abused here since the mother received the full benefit of her expert's testimony when the psychologist was allowed to testify as to her psychological stability. This particular witness said the mother's personality fell within normal limits, there being nothing in her profile that would interfere with her ability to function as a normal mother. He stated that the mother's relationship with Bill,

who was married, did not create an immoral atmosphere for the child. This expert testimony was not binding on the trier of fact. *J.L.P.(H) v. D.J.P.*, 643 S.W.2d 865, 868 (Mo.App.1982). The excluded opinion went beyond the expert's field of knowledge, for the ultimate decision of the court on custody is based on more than just the mother's or child's psychological profile.

This court made a similar decision in *In re Marriage of H.B.*, 559 S.W.2d 73, 75 (Mo.App.1977). There a wife in a dissolution case appealed the custody award on the basis that expert testimony from a clinical psychologist was excluded. This court upheld the trial court's reasoning that it could accept the findings of fact, but "as far as the recommendations [about change of custody] are concerned, that is for the court and that invades the province of the court." The question as framed, went beyond the issues to which the expert was qualified. In this case the witness was allowed to cover all the material issues properly subject to his expertise, so no prejudicial error was committed in excluding this answer. *Cole v. Uhlmann Grain Co.*, 340 Mo. 277, 100 S.W.2d 311, 322 (1936). In addition, without having interviewed or examined the father, the psychologist was in no position to assess the psychological capacity of the other parent. This point is denied.

■ The mother's next point concerns the exclusion of testimony from one of T.D.'s former babysitters as to his behavior *prior* to the divorce. The child was diagnosed years earlier as being hyper-active. The mother claims, without citation of authority, that this testimony was proper to establish there was *no* change in circumstances as required by § 452.410 RSMo. Actually the information was before the court since the mother made an offer of proof. Even if an objection to such testimony should have been overruled, the mother proves no prejudicial error. In fact, the mother points out in her brief that this evidence was cumulative since three of the father's witnesses testified to the early

onset of T.D.'s behavorial problem. Therefore, this point is denied.

■ The mother next contends the trial court erred in interviewing the then seven year old child in chambers and asking for the child's preference as to a custodial parent. Section 452.385. Her point is to the effect the child was too young to form a rational basis for a preference, in this case of his father's home.

The mother relies on *Marriage of Cavitt*, 564 S.W.2d 53, 58 (Mo.App.1978), in which the court said an eight year old usually cannot have a rational basis for preference, and *Gambino v. Gambino*, 636 S.W.2d 81, 82 (Mo.App.1982), which says the weight given such preference varies with the age of the child.

■ The matter of the child's preference is but one factor to consider in determining custody. *Morrison v. Morrison*, 676 S.W.2d 279, 281 (Mo.App.1984). Section 452.375.2(2). There is no assertion the judge placed undue reliance or weight on the in-chambers interview with the child. In view of the circumstances here the interview did not amount to an abuse of discretion. With no showing of improper reliance on the preference, and with substantial evidence to support the modification order, the interview, nor speculation as to reliance thereon, will not cause a reversal. The preference of the child was not indulged here to the detriment of the child's best interests.

■ The mother's next point concerns her being unable to cross-examine the father's present wife about threats allegedly made by her to potential witnesses. As can best be understood from her offer of proof following objections being sustained, the mother claims a man in Clinton was involved in a pending (and unrelated) dissolution proceeding, and the father here had "certain facts" on that case. The father was subpoenaed by this man to testify in this unrelated suit, and according to the offer, his present wife called the man and his family, and said if the father was forced to testify in that suit she, the

present wife, as an employee of the Henry County Sheriff would see action was taken against his business and would make up some facts about which to testify.

The court's ruling that this amounted to an improper attempt at impeachment will not be disturbed. The offer was vague, and even if the questions had been allowed the outcome here would not have been changed. The point is overruled.

■ The last point on appeal is that there was no substantial evidence to support the trial court's finding that a change in circumstance had occurred in both T.D. and the mother which dictated a modification of the prior decree. This court's power to set aside the trial court's decree should be exercised with caution and only with a firm belief that the decree is wrong. *In re Marriage of W.J.W.*, 643 S.W.2d 85, 86 (Mo.App.1982).

■ This court has held it is proper for the trial court to consider the morals and mode of life of the parties in a modification for custody proceeding. *H——— v. H———*, 637 S.W.2d 432, 434 (Mo.App. 1982). There is substantial evidence here to support an inference that the moral conduct of the mother adversely affected T.D. Furthermore, this court has said a court need not wait until there is *demonstrated damage* done to a child before a change of custody is ordered. *M.L.G. v. J.E.G.*, 671 S.W.2d 312, 315 (Mo.App.1984). Here the damage has been demonstrated to the extent of T.D.'s dreams and sexual aggression to other children at school. The child is likely to suffer further detrimental effects if allowed to stay in the environment created by the mother. *M.L.G.*, *supra*, at 316. On these facts the trial court's award of custody to the father was in the best interest of the child and was based on a sufficient change of condition warranting the modification. *H. v. H.*, *supra*, at 434.

In reviewing all the evidence and despite the zealous efforts of the mother's counsel this court does not have a firm belief that the trial court reached a wrong result. The judgment was supported by substan-

tial evidence and was not against the weight of the evidence. Therefore the judgment is affirmed.

All concur.