CROW, Presiding Judge.
Pursuant to § 211.447, RSMo Cum.Supp. 1984, a separate petition was filed with respect to each of five minors, § 211.442(1), RSMo Cum.Supp. 1984, to terminate the parental rights of their parents, § 211.-442(2), RSMo Cum.Supp. 1984. All five minors were born to the same mother, hereafter referred to as “G_” The four youngest (those whose names are abbreviated in the title of this action) were sired by the same father, J_ W_, hereafter referred to as “appellant.” The Juvenile Division of the Circuit Court of Bollinger County, hereafter referred to as “the trial court,” conducted a hearing at which all five petitions were considered simultaneously. Thereafter, the trial court entered a separate order with respect to each of the five minors, terminating the *239 parental rights of both parents of each minor.
Appellant appeals from each of the four orders terminating his parental rights to a child of his. § 211.482, RSMo 1978. G_ did not appeal from any of the orders. The father of the eldest child did not appeal from the order regarding that child. That child was born to G_ out of wedlock, and the father of such child had never acknowledged such child as his own by affirmatively asserting paternity. See § 211.442(2), RSMo Cum.Supp. 1984.
Appellant's four appeals were consolidated, and he has filed one brief containing three assignments of error. One of them (Point 2) states:
“The court erred in terminating appellant’s parental rights with respect to all children in that the State failed to show by clear, cogent and convincing evidence that he repeatedly committed an act of incest and other sexual molestation (Section 211.447.2(2)(c)) or that he subjected the children to a substantial risk of serious physical, mental or emotional harm by reason of ‘debauchery or repeated lewd and lascivious behavior’ (Section 211.447.2(2)(h)). Nor was there evidence of any efforts whatsoever to offer treatment or services to the family for the alleged sexual abuse. There was no evidence of any mistreatment of [B_ N_ W_, R_C__W_, or J_T_W_
The trial court, in order to terminate appellant’s parental rights to any one of his children, was required to find that at least one of the statutory grounds relied on by the Juvenile Officer in regard to such child was established by clear, cogent, and convincing evidence. § 211.447.2(2), RSMo Cum.Supp. 1984; D.G.N. v. S.M., 691 S.W.2d 909, 912[2] (Mo. banc 1985); In the Interest of M.N.M., 681 S.W.2d 457, 458 (Mo.App.1984). This standard of proof meets the due process requirements of U.S. Const, amend. XIV, as enunciated in Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 1402-03[13, 14], 71 L.Ed.2d 599 (1982). The trial court was also required to find that termination of appellant’s parental rights was in the best interest of such child. § 211.447.2, RSMo Cum.Supp. 1984; D.G.N., 691 S.W.2d at 912[2]; M.N.M., 681 S.W.2d at 458.
All five children were represented in the trial court by a guardian ad litem, an attorney at law. The guardian ad litem has not filed a brief in this Court, but the guardian ad litem has adopted the brief filed by counsel for the Juvenile Officer, which brief urges us to affirm the orders of termination.
In discussing the evidence on which the trial court based its orders, we refer to the eldest of the five children (the child not sired by appellant) as “Girl 1,” said child being a female born May 26, 1977. Of the four children sired by appellant, the three eldest are females. They are: B_ M_P_, hereafter referred to as “Girl 2,” born July 23, 1979, out of wedlock; R._C_W_, hereafter referred to as “Girl 3,” born September 24, 1980, in wedlock; and B_N_W_, hereafter referred to as “Girl 4,” born February 21,1983, in wedlock. The youngest child, a male, was born January 27, 1984, in wedlock. He is hereafter referred to as “Boy.”
The saga that ultimately spawned this litigation began when G_came to Bol-linger County in 1977 as a foster child. At that time, she was pregnant with Girl 1. G_was 17 years of age when Girl 1 was born.
G_ met appellant in 1978, and they lived together in Bollinger County, in the home of appellant’s mother, hereafter referred to as “R_W_,” for “a year or so.” R_W_lived there with them. Apparently, Girl 1 lived there also.
Appellant and G_ (and presumably Girl 1) then left R_W_’s home and moved into “a little cabin, two room cabin,” and were residing there when Girl 2 was born.
Some time thereafter, appellant and R_W_brought Girl 1 and Girl 2 to the Bollinger County office of the Division of Family Services (“D.F.S.”), expressing *240 concern that G_was not giving the girls “proper care.” Appellant was desirous that his sister take custody of, or adopt, Girl 2.
As a result of D.F.S. involvement, juvenile jurisdiction was acquired over both girls. They, together with G_, were admitted to the Blosser Home, Marshall, Missouri, on January 7, 1980, for residential counseling and development of G_’s parenting skills.
G_, Girl 1, and Girl 2 remained at the Blosser Home until “the first of March of 1980,” when they returned to Bollinger County with appellant. At that time, they “moved back to the basement” of R_ W_'s home. Juvenile jurisdiction was thereupon terminated, but D.F.S. continued to provide protective services.
Appellant and G_ were married in April, 1980. As noted earlier, Girl 3 was born September 24, 1980, and Girl 4 was born February 21, 1983.
In June, 1983, D.F.S. received a report that Girl 4 “was not being properly supervised.” A D.F.S. caseworker explained: “She had be [sic] placed on the hood of the pick-up truck in her punkin’ seat and had fallen off and sustained bruises and scratches on her head. She had been sit [sic] on the kitchen table in her punkin’ seat and had fallen off to the concrete floor. And this had happened more than once.”
Boy, as already explained, was born January 27, 1984. Appellant, G_, and all five children continued to reside in the basement of R_ W_’s home. Describing it, the caseworker testified: “It’s an unfinished basement. No — It’s concrete floor. There were no partitions. The mattresses were on the floor for the bedding. ... [T]here was not sufficient closet space or storage space, so generally it was cluttered and unkept.”
In April, 1984, appellant and G_ “were having a lot of marital problems.” G_ contacted a D.F.S. caseworker and asked if the latter would put the children in foster care. D.F.S. declined, choosing instead to work with appellant and G_ “trying to help them work through their problems.”
On June 8, 1984, D.F.S. received a “child abuse hotline report” that appellant was “sexually abusing” Girl 1. At that time, appellant, G_., and the five children were still residing in the basement of R_ W_’s home. A caseworker went there that same afternoon. When the caseworker arrived, G_ was standing at a sink washing dishes. The caseworker testified: “It was a very hot day. The odor in the basement smelled of urine and musty odor. The baby [Girl 4] was lying on the kitchen table. The kitchen table was in a slanting position. Evidently the legs weren’t very sturdy. She was there sleeping. There were drippings of food on the table. Flies all over the child.... [Boy], the baby, was on a mattress in the other room, and he was sleeping, and there were flies on him also.... There was trash strung out on the floor. There was mattresses on the floor and some blankets.”
G_told the caseworker that one time Girl 1 and appellant were lying in bed and that appellant was kissing Girl l’s “pee-tie,” [1] but that Girl 1 had her clothes on. G_added that she told appellant to quit, and he said that he “just liked to molest little girls.”
The caseworker, with G_’s permission, then talked privately with Girl 1, who confirmed the information the caseworker had received from G_
The caseworker then departed, but returned that evening for the purpose of talking with appellant. When the caseworker arrived, appellant was “out in the woods” with Boy. When appellant and Boy appeared, the caseworker observed that Boy “had on a dirty disposable diaper.” The caseworker added: “I could *241 smell the mess in his pants. He had bugs all over him.”
When the caseworker confronted appellant with the allegation of sexual abuse of Girl 1, appellant “was very nonchalant, and admitted right off that he had done this.” Specifically, said the caseworker: “He said that he had kissed [Girl l’s] vagina and butt while she had been dressed and when she was naked. And he also admitted biting [Girl 3’s and Girl 2’s] butt and nestling the girl’s vagina with his mustache. And he also said that he had given [Girl 1] long lingering kisses on the mouth.”
Additionally, according to the caseworker: “[H]e said that [Girl 1] is more like [G_] used to be. That [Girl 1] was getting more developed, and she looked like [G_] did when [G_] was younger. And that [Girl 1] was not his. And that [Girl 1] was more receptive to his love than the other girls were.”
Asked what appellant said regarding what the girls thought of this type of behavior, the caseworker answered, “He said the girls liked it.”
The caseworker recalled that at the end of her conversation with appellant, he said he “felt like he did need help.” When asked by the caseworker whether he had “done anything like this” with Girl 4 or Boy, appellant replied, “[0]h, no, I didn’t start with the other girls until they were around two years of age.”
On June 11, 1984, by order of the Juvenile Division of the Circuit Court of Bollinger County, all five children were removed from the custody of appellant and G_, and placed in foster care.
Although the record is vague, it appears that a criminal prosecution was commenced against appellant for “sexually abusing” one of the girls, inferably Girl 1. The caseworker who investigated the abuse report testified that she was scheduled to be in court July 12, 1984, for a hearing in the criminal proceeding. On July 9, three days before the hearing, the caseworker received a phone call from appellant. Describing that call, the caseworker testified: “He wanted me to make sure that I had my story straight about my testimony concerning the three girls. He said he got his story mixed up. He had done it to [Girl 1], but he hadn’t done any to the other two girls, and he wanted me to change my testimony.”
Although appellant made no “overt threats” to the caseworker, she felt “threatened” by his “manner.”
The petitions to terminate the parental rights regarding all five children were filed July 17, 1984. A summons in each of the four termination proceedings in issue here, together with a copy of the petition in each such proceeding, was served on appellant in person on July 27, 1984, by the Deputy Juvenile Officer.
The petition regarding Girl 2 alleged that the termination of appellant’s parental rights was being sought pursuant to § 211.447.2(2)(c), RSMo Cum.Supp. 1984, in that appellant had repeatedly committed an act of incest and other sexual molestation with said child, and also pursuant to § 211.447.2(2)(h), RSMo Cum.Supp. 1984, in that appellant had by reason of debauchery and repeated lewd and lascivious behavior subjected said child to substantial risk of serious physical, mental, or emotional harm.[2] The petition added that termination *242 of appellant’s parental rights regarding Girl 2 would be in the best interest of said child.
The petition regarding Girl 3 alleged that the termination of appellant’s parental rights was being sought for the same reasons alleged in the petition regarding Girl 2.
The petition regarding Girl 4 alleged that the termination of appellant’s parental rights was being sought pursuant to § 211.447.2(2)(h), RSMo Cum.Supp. 1984,[3] in that appellant had by reason of debauchery and repeated lewd and lascivious behavior subjected said child to a substantial risk of serious physical, mental, or emotional harm. The petition added that the termination of appellant’s parental rights would be in the best interest of said child.
The petition regarding Boy alleged that the termination of appellant’s parental rights was being sought for the same reasons alleged in the petition regarding Girl 4.
The hearing took place November 20, 1984. In addition to the evidence already mentioned, a caseworker other than the one who investigated the abuse report testified that on two separate occasions after that investigation, she had talked with appellant and he had said that he would masturbate “under the covers,” and that Girl 1 would be lying on the bed with him. The caseworker also testified that appellant had told her that he and G_ “had had a brawl and that he had slapped her and pushed her out of the car.”
Asked whether any of the children had any medical problems, the caseworker testified that Girl 4 “seems to have a foot that’s turning in, and we are planning to refer her for further medical care on that.” The caseworker also testified that Boy, Girl 2, and Girl 4 each have a “lazy-eye condition.” Asked what medical care the children received while in the custody of appellant and G_the caseworker replied, “Usually the parents did not have any kind of medical coverage, so they didn’t take the children to the doctor, unless it was something really serious.”
The caseworker who had investigated the abuse report testified that she had asked appellant how frequently he had kissed Girl 1 on the vagina and buttocks. According to the caseworker, appellant had replied, “[Ajpproximately four times a month.”
Asked what effect appellant’s actions could have on the children, the caseworker testified; “Well, it could have serious guilt feelings when the children get older. They could feel what happened was their fault. That they had to be taken away from their parents because of something she had done. It could cause serious problems in a relationship that they might want to have later on with another man. And when they have children of their own, it could cause problems.”
At the time of the hearing, appellant and G_were separated. An action for dissolution of marriage filed by G_was pending. G__ was residing in Cape Girar-deau. Appellant was residing in the home of R_ W_The children were all together in one foster home in Reynolds County. A caseworker, when asked whether the children appeared to be missing their parents, testified, “They have not asked about their parents.” Efforts by D.F.S. toward possible adoptive placement for the children had located 12 homes in a “15-county area” which would accept five children.
The trial court took judicial notice of a court record showing that on December 8, 1982, appellant had been placed on probation for three years for possession of more than 35 grams of marihuana.
The trial court interviewed Girl 1 in chambers, in the presence of the guardian ad litem and the court reporter. Girl 1 was in the second grade, and was seven years and six months of age at that time. She stated that appellant had touched her pri *243 vate parts with his hands and fingers, and that he had touched her on the backside with his mustache. Girl 1 also responded affirmatively when asked whether appellant had kissed her on the mouth, using his tongue. Girl 1 stated she did not want appellant to do any of those things.
The trial court also interviewed Girl 2 in chambers, in the presence of the guardian ad litem and the court reporter. Girl 2, however, gave no audible answers to any of the questions about sexual abuse by appellant. She did respond by nods and shakes of her head, but, in our view, those responses, given the general nature of the questions, were inconclusive.
In extinguishing appellant’s parental rights to Girl 2, the trial court found that the Juvenile Officer had shown by clear, cogent, and convincing evidence that appellant had committed one or more acts of sexual molestation of said child, a ground for termination under § 211.447.2(2)(c), RSMo Cum.Supp. 1984. The trial court also found, in regard to Girl 2, that appellant had, by reason of debauchery and repeated lewd and lascivious behavior, subjected said child to a substantial risk of serious physical, mental or emotional harm, a ground for termination under § 211.447.-2(2)(h), RSMo Cum.Supp. 1984. The trial court further found that it was in the best interest of Girl 2 that appellant’s parental rights be terminated. § 211.447.2, RSMo Cum.Supp. 1984.
The trial court made identical findings with respect to the termination of appellant’s parental rights regarding Girl 3.
Appellant maintains that the evidence was insufficient to support the trial court’s findings regarding appellant’s conduct toward either Girl 2 or Girl 3. Appellant characterizes the conduct shown by the evidence as “playful,” and insists that he “did not intend any harm.” He palliates his actions by arguing that D.F.S. did not consider the abuse “serious enough to warrant medical treatment or examination” of the girls.
We find appellant’s arguments unpersuasive. The caseworker who investigated the abuse complaint testified that appellant admitted to her that he had bitten the buttocks of Girl 2 and Girl 3, and that he had nestled their vaginal areas with his mustache. The absence of a “medical examination” of the girls is, in our view, of no moment. The nature of appellant’s conduct with them was such that a medical examination after the girls had been taken into custody by D.F.S. could have hardly been expected to produce any objective evidence of what had occurred.
Additionally, the trial court could have found, by reason of appellant’s licentious conduct with Girl 1, which was more intense than his conduct with Girl 2 and Girl 3, that the latter two girls would be in danger of increased sexual abuse, with its attendant emotional harm, as they grew older. Appellant, by his own admission, began his sexually oriented conduct toward Girl 1, Girl 2, and Girl 3 when each was “around two years of age.” Girl 1 was seven years of age when the children were removed from appellant’s custody on June 11, 1984. Girl 2 was a month short of five years of age at that time, and Girl 3 was three years and eight months of age. The probability that appellant would continue to take indecent liberties with the girls if he regained access to them is evidenced by his statement to the trial court that, “[Pjromis-cuous play does not justify a criminal act in my eyes, sir.”
We hold that the two statutory grounds relied on by the Juvenile Officer for termination of appellant’s parental rights to Girl 2 and Girl 3 were, as to each child, supported by clear, cogent, and convincing evidence.
In terminating appellant’s parental rights to Girl 4, the trial court found that the Juvenile Officer had shown, by clear, cogent, and convincing evidence, that appellant had, by reason of debauchery and repeated lewd and lascivious behavior directed toward said child’s siblings, subjected Girl 4 to a substantial risk of serious physical, mental or emotional harm, and that this constituted grounds for termi *244 nation under § 211.447.2(2)(h), RSMo Cum. Supp. 1984. The trial court further found that it was in the best interest of Girl 4 that appellant’s parental rights be terminated. § 211.447.2, RSMo Cum.Supp. 1984.
The trial court made identical findings with respect to the termination of appellant’s parental rights regarding Boy.
In challenging the sufficiency of the evidence to support the termination of his parental rights to Girl 4 and Boy, appellant correctly points out that there was no evidence of any debauchery or lewd and lascivious behavior by him involving either of those children. That, of course, is manifest in the trial court’s findings that it was appellant’s conduct toward the siblings of Girl 4 and Boy that subjected Girl 4 and Boy to a substantial risk of serious physical, mental or emotional harm.
Appellant maintains that under § 211.-447.2(2)(h), RSMo Cum.Supp. 1984, termination of parental rights to a child cannot be based on debauchery or lewd and lascivious behavior directed toward a sibling of such child. According to appellant, the offending conduct must be directed toward the child who is the subject of the termination petition.
The Juvenile Officer disagrees, arguing that if there is debauchery or repeated lewd and lascivious behavior by a parent, it is not essential that said behavior be directed toward the child who is the subject of the termination petition. The issue, says the Juvenile Officer, is whether the parent’s behavior subjects such child to a substantial risk of serious physical, mental, or emotional harm. In support of that hypothesis, the Juvenile Officer cites In the Interest of J.A.J., 652 S.W.2d 745 (Mo.App.1983). There, termination was based on § 211.447.2(2)(e), RSMo 1978, which authorized termination of parental rights to a child if a parent had committed or knowingly permitted serious injury or death of a sibling due to parental abuse or willful and wanton neglect. In that case, one child had died from parental abuse and another child had sustained serious injury from parental abuse. Those circumstances were held sufficient to terminate the parental rights of both parents to a third child, who had not yet sustained any injury. Id. at 749.
There is, of course, a difference between the statutory provision involved in J.A.J. (§ 211.447.2(2)(e), RSMo 1978) and the statutory provision involved in the instant case regarding Girl 4 and Boy (§ 211.447.2(2)(h), RSMo Cum.Supp. 1984).
Section 211.447.2(2)(e), RSMo 1978, specifically authorized termination of parental rights to a child if the parent had committed or knowingly permitted serious injury or death of a sibling of the child due to parental abuse or willful and wanton neglect. No reference to a sibling appears in § 211.447.2(2)(h), RSMo Cum.Supp. 1984. It will be observed, however, that nothing in the latter section requires that the behavior described therein be directed toward the child who is the subject of the termination proceeding.
Included in the conduct described in that section (§ 211.447.2(2)(h), RSMo Cum. Supp. 1984) is “habitual use of intoxicating liquor or narcotic drugs.” Such conduct by a parent is grounds for termination if, by reason thereof, the child is subjected to a substantial risk of serious physical, mental, or emotional harm. Nothing in that section requires, as a condition of termination, that the parent involve the child in the use of intoxicating liquor or narcotic drugs. It is the danger to the child brought about by the parent’s habitual use of those substances which constitutes grounds for termination. By the same rationale, if the parent’s debauchery or repeated lewd and lascivious behavior subjects the child to a substantial risk of serious physical, mental or emotional harm, we hold that such circumstances constitute grounds for termination under said section, irrespective of whether the child is the target of such conduct.
As was said in J.A.J., 652 S.W.2d at 749, and cited with approval by the Supreme Court of Missouri in D. G.N., 691 S.W.2d at 912, “[T]o require this child to suffer the fate of his siblings prior to termination of *245 parental rights would be a tragic misapplication of the law.” Appellant’s contention that termination of his parental rights to Girl 4 and Boy under § 211.447.2(2)(h), RSMo Cum.Supp. 1984, could not be predicated on lewd and lascivious behavior by him involving Girl 1, Girl 2, and Girl 3 is without merit.
Appellant, as another facet of his attack on the sufficiency of the evidence, asserts that there was no evidence that D.F.S. endeavored to offer “treatment or services to the family for the alleged sexual abuse.” Appellant neglects, however, to explain why that was significant, and we find nothing in subparagraphs (c) or (h) of § 211.447.2(2), RSMo Cum.Supp. 1984, requiring such “treatment or services” as a prerequisite for termination of parental rights under those subparagraphs. There is a statutory ground for termination (§ 211.447.2(2)(b), RSMo Cum.Supp. 1984) which involves failure by a parent to reasonably comply with a court-approved plan designed to remedy a condition of child neglect. Acceptance by the parent of treatment and services is frequently a condition of such a plan. That ground for termination, however, was not relied on by the Juvenile Officer in the instant case. In the circumstances here, the absence of “treatment or services to the family for the alleged sexual abuse” is no defense to the termination of appellant’s parental rights.
Appellant does not dispute the trial court’s finding that termination of his parental rights to all four of his children would be in their best interest. § 211.447.-2, RSMo Cum.Supp. 1984. Consequently, we need not dwell on that finding. We observe, however, that in addition to the licentious conduct heretofore recounted, appellant had in 1982 been adjudicated guilty of possession of more than 35 grams of marihuana, a felony. §§ 195.020.1 and 195.200.l(l)(b), Laws 1982, pp. 384-86. The trial court also had before it the evidence regarding the lack of cleanliness of the children, the unsanitary conditions under which they lived while in appellant’s custody, and the fact that some of their medical problems had been allowed to go untreated.
While we must examine whether the trial court applied the correct standard of proof, due regard is given for the opportunity of the trial court to judge the credibility of the witnesses, and the decree will be sustained unless there is no substantial evidence to support it, unless it is contrary to the weight of the evidence, or unless it erroneously declares or applies the law. D.G.N., 691 S.W.2d at 912. Applying that standard of review, we uphold the trial court’s findings that the grounds relied on by the Juvenile Officer for termination of appellant’s parental rights to each of the four children under consideration here were established by clear, cogent, and convincing evidence. Appellant’s Point 2 is denied.
The next assignment of error we consider is appellant’s Point 1, which states:
“The court erred in failing to appoint counsel for appellant when it appeared from the circumstances that appellant was indigent, and desired counsel, and counsel was necessary for a full and fair hearing and to protect appellant’s rights.”
Section 211.462, RSMo 1978, which was in effect during all stages of these proceedings in the trial court, provided, in pertinent part:
“1. As soon as practicable after the filing of a petition and prior to the hearing, the parent or guardian of the person of the child shall be notified of the right to have counsel, and if they request counsel and are financially unable to employ counsel, counsel shall be appointed by the court. Notice of this provision shall be contained in the summons....
2. When the parent is a minor the court shall appoint a guardian ad litem to represent such minor parent.
...” (Emphasis added.)
Appellant bases his Point 1 on § 211.462, above, and also on Rule 116.01.-d., Missouri Rules of Practice and Procedure in Juvenile Court (15th ed. 1984). Appellant’s reliance on Rule 116.01.d., is misplaced, however, as that Rule does not ap *246 ply to a proceeding to terminate parental rights. That is because of Rule 110.01, which states:
“Rules 110 through 128 shall govern practice and procedure in the juvenile courts under Sections 211.011 through 211.481 RSMo.”
Proceedings for termination of parental rights, while brought in the juvenile division of the circuit court, are not authorized by the statutes specified in Rule 110.01, above. Proceedings for termination of parental rights are instead authorized by §§ 211.442-.492, RSMo 1978, as amended. Those sections are not mentioned in Rule 110.01.
We also point out that subsection 2 of § 211.462, RSMo 1978, supra, does not apply in the instant case, as appellant was, according to the record, 26 years of age at the time the termination proceedings were instituted.
Having set those items in place, we next observe that the notice requirements of subsection 1 of § 211.462, RSMo 1978, supra, were fully satisfied. In that connection, we explained earlier that a summons in each of the four termination proceedings in issue here, together with a copy of the petition in each such proceeding, was served on appellant in person on July 27, 1984, by the Deputy Juvenile Officer. That was almost four months prior to the hearing. Pertinent to appellant’s Point 1, each summons stated:
“TO THE JUVENILE, PARENTS, GUARDIAN OR OTHER RESPONDENT
[[Image here]]
(2) You have a right to have an attorney present to assist you at all juvenile court hearings, or you may waive your right to an attorney. If you do desire to be represented by an attorney, you should begin now to obtain his services. If you cannot afford to pay an attorney, and you ivish to have a?i attorney to represent you, the Court has the power to appoint an attorney to represent you, without charge. You should make known to the Court your desire to have an attorney appointed for you. ....” (Emphasis added.)
It is obvious why subsection 1 of § 211.-462, RSMo 1978, required that notice to a parent of his right to counsel, and of his right to the appointment of counsel upon request if indigent, be included in the summons. Unlike a criminal proceeding, a parent in a termination proceeding will not, in all likelihood, be before the court until the date of the termination hearing. Consequently, the court will have no opportunity to advise the parent in person of his right to appointed counsel, if indigent.
In a felony prosecution, the court, at the time a defendant first appears in person, can — indeed must (Rule 22.07(b), Missouri Rules of Criminal Procedure (17th ed. 1986)) — inform the defendant of his right to retain counsel and his right to request the assignment of counsel if he is unable to retain counsel.
There is no such step, however, in a proceeding to terminate parental rights. Therefore, the only assurance that a parent will be aware of his right to counsel and of his right to the appointment of counsel if indigent is to provide that he receive written notice thereof. The summons is the logical place for such notice, as the summons is the official notification to the parent that the proceeding to terminate parental rights has been commenced. Moreover, the summons is served upon the parent at the outset of the proceeding. Consequently, including the notice regarding counsel in the summons affords the parent the greatest amount of time possible to obtain counsel prior to the hearing, either by employing counsel or by requesting the court to appoint counsel.
The record before us is bare of any evidence that appellant, during the four month interval between the service of summons and the date of the hearing, made any effort whatever to inform the trial court that he desired to be represented by counsel and that he was financially unable to employ counsel.
*247 That the trial court was unaware that appellant intended to appear at the hearing without counsel is manifest from this colloquy between the trial court and appellant, which took place at the outset of the hearing:
“THE COURT: J_ W_, Mr. W_, would you take a chair up here somewhere, and I notice you appear without Counsel and I assume that’s by your choice, Mr. W_?
[APPELLANT]: Well, not exactly. But it is. I applied to legal aid and I was refused.
THE COURT: I see.
[APPELLANT]: I got laid off and still didn’t have sufficient money to hire an attorney. I restated my financial situation and then I’ve got no response from them.
THE COURT: Well, you can appear and participate then as father of some of the children involved in this. And we’ll try to help you as much as possible. But I want you to understand we cannot represent you, nor give you any more consideration than we give any of the other parties involved. So, with that understanding we’ll proceed then....”
Appellant — now ably represented on appeal by retained counsel — asserts that the assistance of counsel in the trial court would have been invaluable, as counsel could have cross-examined the caseworkers, objected to certain supposedly inadmissible evidence, aided appellant in deciding whether to testify in his own behalf,[4] and subpoenaed witnesses and documents.
We do not question that premise, nor do we, in what follows, imply that an indigent parent’s statutory right under § 211.462.1, RSMo 1978,[5] to the appointment of counsel upon request in a termination proceeding should not be scrupulously honored.
The issue in the instant case, however, as we perceive it, is whether the trial court, at the start of the hearing, having received no prior request by appellant for the appointment of counsel, committed reversible error by proceeding with the hearing without appointing counsel for appellant.
In that regard, we note that the Supreme Court of the United States has held, in a procedural context much like that in the case before us, that the due process clause of U.S. Const, amend. XIV does not require the appointment of counsel for an indigent parent in every parental termination proceeding. Lassiter v. Department of Social Services of Durham County, 452 U.S. 18, 101 S.Ct. 2153, 2162[12], 68 L.Ed.2d 640 (1981). The decision whether due process calls for the appointment of counsel for an indigent parent in a particular termination proceeding is to be answered in the first instance by the trial court, subject, of course, to appellate review. 101 S.Ct. at 2162[12], It is manifest, however, that § 211.462, RSMo 1978, goes beyond Lassi-ter, in that said statute mandates the appointment of counsel for indigent parents in all termination proceedings, upon request.
The problem in the instant case is that there was no such request by appellant until the start of the hearing. At that point, the trial court, as we see it, had two choices: (1) proceed with the hearing as scheduled, or (2)- appoint counsel for appellant and thereby abort the hearing, as it would have been unrealistic to expect that any competent attorney appointed to represent appellant could have come immediately to the courthouse, conferred with appellant, reviewed the pleadings and records, and, without any opportunity for further preparation or to subpoena witnesses, been willing to go to trial.
Adding to the dilemma in which the trial court found itself by reason of appellant’s day-of-trial request for appointed counsel (if indeed appellant’s comments amounted to that) is the admonition in D.G.N., 691 S.W.2d at 914, that the courts must do all *248 within their power to ensure that the adjudication of cases for termination of parental rights be easier, fairer, faster and more in the best interest of the child. The Supreme Court said: “To this end, we direct that all future handling of termination of parental rights be expedited in every way possible and with all deliberate speed. This we believe should apply to the filing of responsive pleadings, to pre-trial procedures, to hearings, to preparation of transcripts, to docketing and disposition, and to briefing, hearing and decision in the appellate system. Only by so doing will it be possible to minimize the harm to children who must remain in limbo while the judicial system runs its course. We do not believe that this is too much to ask of lawyers, judges, the court and juvenile personnel.”
We would add that in the circumstances of the instant case, it was not asking too much of appellant (who now strenuously insists that his right to counsel was violated) to require that he make known to the trial court his desire to be represented by appointed counsel far enough ahead of the scheduled hearing date that (a) the trial court would have a reasonable opportunity to appoint counsel, and (b) counsel would have adequate time to prepare.
Nothing in the record suggests that appellant lacked the mental acuity, or the means, to timely inform the trial court that he desired to be represented by appointed counsel. Appellant, as noted earlier, was 26 years of age at the time the termination proceedings were commenced. He was employed by a construction company, in season, and he also earned income cutting and selling wood. That appellant was not bashful about contacting public officials is demonstrated by his phone call to the D.F.S. caseworker regarding her testimony, three days before a court hearing in the sexual abuse case.
To convict the trial court of error in the instant case would, in effect, require all trial courts, in termination proceedings, to continually monitor the case files to see whether any attorney had entered an appearance for the parents, and, if no such appearance was shown, to contact the parents at intervals prior to trial to see what arrangements, if any, they were making in regard to counsel, or whether they desired to be represented by appointed counsel. Only by such means could a trial court avoid aborting a termination hearing if an indigent parent appeared without counsel on the hearing date and requested that counsel be appointed. We are unaware of any constitutional provision or statute that requires a trial court to maintain that degree of surveillance over termination cases in order to avoid day-of-trial continuances when a parent, who has made no prior request for appointment of counsel, shows up and demands to be represented.
Appellant was not the only party with a stake in these proceedings. G._was an interested party, and she and her attorney appeared on the trial date, ready for trial. The children likewise had a stake in the proceedings, and their guardian ad litem was present and prepared for trial. At least two of the children, Girl 1 and Girl 2, were likewise present, and they were obliged to undergo the discomfort of questioning by the trial judge regarding appellant’s conduct.
To reverse the trial court in this case would be to reward appellant for his indolence in failing to request the appointment of counsel prior to trial, and it would also prolong the period of legal limbo for the four children involved. Additionally, it would invite similar delaying tactics by other litigants in future termination cases.
Assuming, without deciding, that appellant’s comments to the trial court at the start of the hearing constituted a request for the appointment of counsel, and further assuming, without deciding, that appellant could have demonstrated he was financially unable to employ counsel, we hold that his request for appointment of counsel, in the circumstances of this case, came too late to trigger the trial court’s statutory duty to appoint counsel under § 211.462.1, RSMo 1978. Furthermore, on the record before us, we perceive no consti *249 tutional violation in the trial court’s failure to appoint counsel.
Lest our holding be misunderstood or indiscriminately applied in future cases, we acknowledge that circumstances could exist where a parent, by reason of physical or mental deficiency or other incapacity, could not reasonably be expected to understand or respond to the notice about counsel in the summons. In such cases, some further appropriate action by court officials might be warranted to ensure that such parent had access to counsel if such parent so desired, and if such parent were financially unable to employ counsel. No such circumstances, however, exist here. In short, appellant has no excuse for neglecting to timely inform the trial court that he desired to be represented by appointed counsel, and he should not now benefit from his neglect by being awarded a second opportunity to litigate the termination issues.
Appellant’s Point 1 is denied.
Appellant’s final assignment of error asserts that the trial court wrongly received in evidence “prior and pending juvenile and criminal court records because such records were separate proceedings, constituted hearsay, and were irrelevant and not probative of any issue before the trial court.”
The “juvenile court” records referred to by appellant in this point, as revealed in the argument portion of his brief, were the files of the cases in which juvenile jurisdiction had been assumed over Girl 1 and Girl 2 in 1979. As recounted earlier, the event that precipitated the exercise of juvenile jurisdiction over those children at that time was the action of appellant and R_ W_in bringing the girls to the Bollinger County office of D.F.S. because G_was allegedly not giving the girls “proper care.”
Those facts were related at trial in the testimony of a caseworker, thus the trial court did not have to rely on the files of the earlier cases for that information. What other information may have appeared in those files is consigned to speculation, as appellant has not included them in the record on appeal. If there was objectionable and prejudicial information in the files of the earlier cases, it was appellant’s duty to demonstrate such by including at least the offending portions of the files in the record on appeal. An appellant has the burden of affirmatively establishing reversible error, McCandless v. Manzella, 369 S.W.2d 188, 190[2] (Mo.1963); State ex rel. McNutt v. Northup, 367 S.W.2d 512, 513-14[1] (Mo.1963), and it is the duty of an appellant to provide an appellate court with a record containing everything necessary to the determination of questions presented to it, Coulter v. Michelin Tire Corp., 622 S.W.2d 421, 437[34] (Mo.App.1981), cert. denied, 456 U.S. 906, 102 S.Ct. 1752, 72 L.Ed.2d 162 (1982); Ingram v. Civil Service Commission, 584 S.W.2d 633, 635[4] (Mo.App.1979). Having failed to supply us the portions of the juvenile case records on which he bases his final point, appellant has failed to preserve for appellate review any issue regarding their admissibility.
Furthermore, we note that § 211.472, RSMo 1978, which was in effect at the time of trial,[6] provided:
“In all proceedings for termination of parental rights of a child, except those filed under subdivision (1) of subsection 2 of section 211.447, an investigation and social study shall be made by the juvenile officer, the state division of family services or other public or private agency authorized or licensed to care for children as directed by the court, and a written report shall be made to the court to aid the court in determining whether the termination is in the best interests of the child. It shall include such matters as the parental background, the fitness and capacity of the parents to discharge parental responsibilities, the child’s home, present adjustment, physical, emotional and mental condition, and such other facts as are *250 pertinent to the determination. Attorneys representing parties before the court shall have access to the written report. All ordered evaluations and reports shall be made available to the attorneys representing parties before the court at least fifteen days prior to the hearing.” (Emphasis added.)
A report required by the above statute was prepared regarding each of the children in issue here, and furnished to the trial court. The Juvenile Officer has supplied us copies of those reports. They contain, as the statute requires, information regarding the parental background and fitness and capacity of the parents to discharge parental responsibilities. The reports begin with G_’s arrival in Bollinger County in 1977, and they chronicle much of the evidence adduced at trial. The trial court thus had before it, in the reports required by § 211.472, much of the history that one would expect to have appeared in the earlier case files. Absent a showing of what, if anything, appeared in the earlier files but did not appear in the reports prepared per § 211.472, no error in the admission in evidence of the earlier juvenile case files has been demonstrated.
Reports prepared pursuant to § 211.472, RSMo 1978, are, by the terms of that statute, to be considered by the court in determining whether termination of parental rights is in the best interests of the child. Obviously, the statute contemplates that such reports are to be weighed along with the other evidence on that issue. In re Marriage of Cavitt, 564 S.W.2d 53 (Mo.App.1978); Smead v. Allen, 581 S.W.2d 93 (Mo.App.1979); and R.L.L. v. Strait, 633 S.W.2d 409 (Mo.App.1982), cited by appellant, do not pertain to reports authorized by § 211.472, RSMo 1978. Cavitt involved a report prepared pursuant to § 452.390, Laws 1973, p. 470. 564 S.W.2d at 56[1]. So did Smead. 581 S.W.2d at 94[1]. R.L.L. involved reports prepared in connection with a proceeding by which the juvenile court originally assumed jurisdiction over a child pursuant to § 211.031, RSMo 1978. Such reports, therefore, were not of the type contemplated by § 211.472, RSMo 1978. 633 S.W.2d at 411, n. 2.
Appellant has demonstrated no basis for reversal in the trial court’s receipt in evidence of the 1979 juvenile case records regarding Girl 1 and Girl 2.
The “criminal court” records referred to by appellant in his final point, as revealed in the argument portion of his brief, were those regarding the 1982 case wherein appellant had been placed on probation for three years for possession of more than 35 grams of marihuana, and the pending charge of “sexual abuse,” which was scheduled to go to trial the day after the termination hearing.
Appellant cites no authority in support of his contention that those records were “irrelevant and prejudicial in the context of the termination hearing.” Bearing in mind that one of the issues the trial court had to resolve in regard to each of the children was whether termination of appellant’s parental rights was in the best interest of such child, § 211.447.2, RSMo Cum.Supp. 1984, we hold that evidence that appellant, at the time of the termination hearing, was on probation for the marihuana offense, was relevant to the “best interest” issue. Indeed, given the awesome responsibility placed on a trial court in a proceeding to terminate parental rights, it would be absurd to deny a trial court such information.
Regarding the pending sexual abuse charge, we note that in a court-tried case, in order to predicate reversible error on the erroneous admission of evidence, the party making the contention must demonstrate the absence of sufficient competent evidence to support the trial court’s order. J.A.J., 652 S.W.2d at 749[4]. Here, even if the receipt in evidence of the court record in the pending sexual abuse case was error—an issue we need not decide—there was abundant competent evidence supporting the trial court’s findings regarding the termination of appellant’s parental rights to each of the four children he sired. *251 Therefore, admission of such record in evidence affords no grounds for reversal.
Each of the four orders appealed from is affirmed.
FLANIGAN, J., concurs.
MAUS, J., concurs and files concurring opinion.
PREWITT, C.J., not participating.

. Another caseworker explained that the children use the term “peetie" to refer to the “vaginal area.”

. Section 211.447, RSMo Cum.Supp. 1984, provides, in pertinent part:
[[Image here]]
2. The juvenile court may, upon a petition filed by the juvenile officer under this section, terminate the rights of parent to a child if it finds that such termination is in the best interest of the child and one or more of the following conditions are found to exist:
[[Image here]]
(2) When it appears by clear, cogent and convincing evidence that one or more of the following conditions exist:
[[Image here]]
(c) The parent has committed, or knowingly permitted, an act of incest with the child, or other sexual molestation of the child;
[[Image here]]
(h) The parent who by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs or repeated lewd and lascivious behavior has subjected the child to a substan *242 tial risk of serious physical, mental or emotional harm;
[[Image here]]

. See footnote 2, supra.

. Appellant chose not to testify.

. Section 211.462, RSMo 1978, was amended in 1985. See pp. 264-65, RSMo Supp. 1985. The right of an indigent parent to appointed counsel in a termination proceeding is conferred by subsection 2 of new § 211.462.

. Section 211.472, RSMo 1978, was repealed by Laws 1985, H.B. 366 et al. The report provided for in repealed § 211.472 is now provided for in new § 211.455.3, RSMo Supp. 1985.